## UNITED STATES v. DARUSMONT et ux.

No. 80–243.   Decided January 12, 1981

Per Curiam.

Appellees instituted this federal income tax refund suit, claiming that the 1976 amendments of the minimum tax provisions contained in §§ 56 and 57 of the Internal Revenue Code of 1954, 26 U. S. C. §§ 56 and 57, could not be applied to a transaction that had taken place in 1976, prior to the enactment of the amendments, without violating the Due Process Clause of the Fifth Amendment.

Appellees prevailed in the District Court. The United States has taken an appeal to this Court pursuant to 28 U. S. C. § 1252, which authorizes a direct appeal from the final judgment of a court of the United States holding an Act of Congress unconstitutional in any civil action to which the United States is a party. And a direct appeal may be taken when, as here, a federal statute has been held unconstitutional as applied to a particular circumstance. *Fleming* v. *Rhodes,* 331 U. S. 100 (1947). See *United States* v. *Christian Echoes National Ministry, Inc.,* 404 U. S. 561, 563 (1972).

I

The appellees, E. M. Darusmont and B. L. Darusmont, are husband and wife. Mrs. Darusmont is a party to this action solely because she and her husband filed a joint federal income tax return for the calendar year 1976. We hereinafter sometimes refer to the appellees in the singular, either as "appellee" or as "taxpayer."

In April 1976, Mr. Darusmont was notified by his employer that he was to be transferred from Houston, Tex., to Bakersfield, Cal. Appellee, accordingly, undertook to dispose of his Houston home. That home was a triplex. One of the three units was occupied by the Darusmonts; taxpayer rented the other two. Appellee retained a real estate firm to list the property and to give him advice as to the most advantageous way to sell it. The firm suggested various alternatives (sale as separate condominium units, or as a whole, and either for cash or on the installment basis). The firm and appellee discussed the income tax consequences of each alternative, including the tax on capital gain, the installment method of reporting, and the possibility of deferring a portion of any capital gain by the timely purchase of a replacement home in California.

After considering the several possible methods of structuring the sale, and after computing the projected income tax consequences of each method, appellee decided on an outright

sale. That sale was effected on July 15, 1976, for cash. This resulted in a long-term capital gain to the taxpayer. Because, however, appellee purchased a replacement residence in California, he was able, under § 1034 of the Code, 26 U. S. C. § 1034, to defer recognition of that portion of the gain attributable to the unit of the Texas house that the Darusmonts had occupied. Appellee's recognized gain on the sale of the other two units was $51,332. After taking into account the deduction of 50% of net capital gain then permitted by § 1202 of the Code, 26 U. S. C. § 1202, appellee included the remainder of the gain in his reported taxable income. The Darusmonts timely filed their joint federal income tax return for the calendar year 1976. That return showed a tax of $25,384, which was paid.

The present controversy concerns $2,280, the portion of appellee's 1976 income tax liability attributable to the minimum tax imposed by § 56 of the Code on items of tax preference as defined in § 57. These minimum tax provisions, which impose a tax in addition to the regular income tax, first appeared with the enactment of the Tax Reform Act of 1969, Pub. L. 91–172, § 301, 83 Stat. 580. Originally, the minimum tax equaled 10% of the amount by which the aggregate of enumerated items of tax preference exceeded the sum of a $30,000 exemption plus the taxpayer's regular income tax liability. For an individual, one of the items of tax preference was the deduction under § 1202 for net capital gain. See § 57 (a)(9)(A). Thus, appellee's § 1202 deduction for 1976 for 50% of the capital gain recognized on the sale of the two units of the Texas triplex was an item of tax preference. If the statute's original formulation, with its base of $30,000 plus the regular income tax liability, had been retained in the statute for 1976, appellee would not have owed any minimum tax as a result of the sale of the Houston house.

On October 4, 1976, however, the President signed the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520. Section 301 of that Act, 90 Stat. 1549, amended § 56 (a) of the Code

so as to increase the rate of the minimum tax and to reduce the amount of the exemption to $10,000 or one-half of the taxpayer's regular income tax liability (with certain adjustments), whichever was the greater. Section 301 (g)(1), 90 Stat. 1553, with exceptions not pertinent here, then provided that "the amendments made by this section shall apply to items of tax preference for taxable years beginning after December 31, 1975." It is this stated effective date that creates the issue now in controversy for, in a certain sense, the October 4, 1976, amendment of § 56 operated "retroactively" to cover the portion of 1976 prior to that date. A result of the statutory change of October 4 was that appellee was subjected to the now contested minimum tax of $2,280 on the sale of the Texas house the preceding July 15.

A proper claim for refund of the minimum tax so paid was duly filed with the Internal Revenue Service. Upon the denial of that claim, the Darusmonts instituted this refund suit in the United States District Court for the Eastern District of California. Taxpayer argued that the 1976 amendments could not be applied constitutionally to a transaction fully consummated prior to their enactment. He further argued that had he known that the sale of the house would have resulted in liability for the minimum tax, he could have structured the sale so as to avoid the tax. He has conceded, however, that when he was considering the various ways in which he could dispose of the Texas property, he was not aware of the existence of the minimum tax.

The District Court entered judgment in favor of appellee. It held that the application of the 1976 amendments to a transaction consummated in 1976 prior to October 4 subjected appellee "to a new, separate and distinct tax," and was "so arbitrary and oppressive as to be a denial of due process" guaranteed by the Fifth Amendment. App. to Juris. Statement 3a; 80–2 USTC ¶ 9671, p. 85,208, 47 AFTR 2d ¶ 81–366, p. 81–519. We note that the District Court's ruling is in conflict with the later decision of the United States Court of Ap-

peals for the Eighth Circuit in *Buttke* v. *Commissioner*, 625 F. 2d 202 (1980), aff'g 72 T. C. 677 (1979).[1]

## II

In enacting general revenue statutes, Congress almost without exception has given each such statute an effective date prior to the date of actual enactment. This was true with respect to the income tax provisions of the Tariff Act of Oct. 3, 1913, and the successive Revenue Acts of 1916 through 1938.[2] It was also true with respect to the Internal Revenue Codes of 1939 and 1954.[3] Usually the "retroactive" feature has application only to that portion of the current calendar year preceding the date of enactment, but each of the Revenue Acts of 1918 and 1926 was applicable to an entire calendar year that had expired preceding enactment. This "retroactive" application apparently has been confined

---

[1] The Tax Court consistently has adhered to this position. See *Estate of Kearns* v. *Commissioner*, 73 T. C. 1223 (1980); *Westwick* v. *Commissioner*, 38 TCM 1269, ¶ 79,329 P–H Memo TC (1979) (appeal pending CA10); *Estate of Lewis* v. *Commissioner*, 40 TCM 78, ¶ 80,106 P–H Memo TC (1980) (appeal pending CA5); *Schopp* v. *Commissioner*, 40 TCM 275, ¶ 80,148 P–H Memo TC (1980); *Witte* v. *Commissioner*, 40 TCM 1259, ¶ 80,393 P–H Memo TC (1980).

Other rulings adverse to the taxpayer on this issue are *Appendrodt* v. *United States*, 490 F. Supp. 490 (WD Pa. 1980); *Metzger* v. *United States*, No. 78–0346–S (SD Cal. Feb. 16, 1979) (appeal pending CA9).

[2] Tariff Act of Oct. 3, 1913, § II, D, 38 Stat. 168; Revenue Act of 1916, §§ 8 (a) and (b), 13 (a) and (b), 39 Stat. 761, 770, 771; War Revenue Act of 1917, §§ 1, 2, 4, 40 Stat. 300–302; Revenue Act of 1918, § 200, 40 Stat. 1058; Revenue Act of 1921, § 200 (1), 42 Stat. 227; Revenue Act of 1924, § 200 (a), 43 Stat. 254; Revenue Act of 1926, § 200 (a), 44 Stat. (part 2) 10; Revenue Act of 1928, §§ 1, 48 (a), 45 Stat. 795, 807; Revenue Act of 1932, §§ 1, 48 (a), 47 Stat. 173, 187; Revenue Act of 1934, § 1, 48 Stat. 683; Revenue Act of 1935, 49 Stat. 1014; Revenue Act of 1936, § 1, 49 Stat. 1652; Revenue Act of 1937, 50 Stat. 813; Revenue Act of 1938, § 1, 52 Stat. 452.

[3] Internal Revenue Code of 1939, § 1, 53 Stat. 4; Internal Revenue Code of 1954, § 7851 (a) (1) (A), 68A Stat. 919.

to short and limited periods required by the practicalities of producing national legislation. We may safely say that it is a customary congressional practice.

The Court consistently has held that the application of an income tax statute to the entire calendar year in which enactment took place does not *per se* violate the Due Process Clause of the Fifth Amendment. See *Stockdale* v. *Insurance Companies,* 20 Wall. 323, 331, 332 (1874); *id.,* at 341 (dissenting opinion); *Brushaber* v. *Union Pacific R. Co.,* 240 U. S. 1, 20 (1916); *Cooper* v. *United States,* 280 U. S. 409, 411 (1930); *Milliken* v. *United States,* 283 U. S. 15, 21 (1931); *Reinecke* v. *Smith,* 289 U. S. 172, 175 (1933); *United States* v. *Hudson,* 299 U. S. 498, 500–501 (1937); *Welch* v. *Henry,* 305 U. S. 134, 146, 148–150 (1938); *Fernandez* v. *Wiener,* 326 U. S. 340, 355 (1945). See also Ballard, Retroactive Federal Taxation, 48 Harv. L. Rev. 592 (1935); Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 706–711 (1960).

Justice Miller succinctly stated the principle a century ago in writing for the Court in *Stockdale, supra:*

> "The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed." 20 Wall., at 331.

Justice Van Devanter in writing for the Court in *Hudson, supra,* similarly approved the congressional practice:

> "As respects income tax statutes it long has been the practice of Congress to make them retroactive for relatively short periods so as to include profits from transactions consummated while the statute was in process of enactment, or within so much of the calendar year as preceded the enactment; and repeated decisions of this

Court have recognized this practice and sustained it as consistent with the due process clause of the Constitution." 299 U. S., at 500.

The Court has stated the underlying rationale for allowing this "retroactivity":

"Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute." *Welch* v. *Henry,* 305 U. S., at 146–147.

Judge Learned Hand also commented upon the point and set forth the answer to the constitutional argument:

"Nobody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for periods of less than twelve months; Congress has done so from the outset. . . . The injustice is no greater than if a man chance to make a profitable sale in the months before the general rates are retroactively changed. Such a one may indeed complain that, could he have foreseen the increase, he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities, the system being already in operation. His is a different case from that of one who, when he takes action, has no reason to suppose that any transactions of the sort will be taxed at all." *Cohan* v. *Commissioner,* 39 F. 2d 540, 545 (CA2 1930).

Appellee concedes that the Court "has held that a retroactive income tax statute does not violate the 'due process'

clause of the Constitution *per se.*" Motion to Affirm 6. Appellee asserts, however, that three tests have been developed for determining whether a particular tax is so harsh and oppressive as to be a denial of due process, namely, whether the taxpayer could have altered his behavior to avoid the tax if it could have been anticipated by him at the time the transaction was effected; whether the taxpayer had notice of the tax when he engaged in the transaction; and whether the tax is a new tax and not merely an increase in the rate of an existing income tax. Appellee argues that the altered minimum tax fits within these three tests.

In support of the first proposition, appellee cites *Blodgett* v. *Holden* 275 U. S. 142 (1927), modified, 276 U. S. 594 (1928), and *Untermyer* v. *Anderson,* 276 U. S. 440 (1928). These, however, are gift tax cases, and the gifts in question were made and completely vested before the enactment of the taxing statute. We do not regard them as controlling authority with respect to any retroactive feature of a federal income tax. See *Welch* v. *Henry,* 305 U. S., at 147–148.

Regarding his second test, appellee states that he had no notice, either actual or constructive, of the forthcoming October changes in the minimum tax when he sold the triplex in July and that, as a consequence, the retroactive imposition of the tax after the sale was arbitrary, harsh, and oppressive. Assuming, for purposes of argument, that personal notice is relevant, appellee is hardly in a position to claim surprise at the 1976 amendments to the minimum tax. The proposed increase in rate had been under public discussion for almost a year before its enactment. See H. R. Rep. No. 94–658, pp. 130–132 (1975); S. Rep. No. 94–938, pp. 108–114 (1976). The Tax Reform Act of 1976 reflected a compromise between the House and Senate proposals. Both bills, however, provided that the changes in the minimum tax were to be effective for taxable years beginning after 1975. Appellee, therefore, had ample advance notice of the increase in the effective minimum rate.

Appellee's "new tax" argument is answered completely by the fact that the 1976 amendments to the minimum tax did not create a new tax. To be sure, the minimum tax is described in the statute, § 56 (a), as one "[i]n addition to" the regular income tax. But the minimum tax provision was imposed in 1969, and one of the original items of tax preference subjected to the minimum tax was the untaxed portion of any net long-term capital gain. 83 Stat. 582.

Appellee's position is far different from that of the individual who, as Judge Hand stated in the language quoted above, "has no reason to suppose that any transactions of the sort will be taxed at all." The 1976 changes affected appellee only by decreasing the allowable exemption and increasing the percentage rate of tax. "Congress intended these changes to raise the effective tax rate on tax preference items . . . ." Staff of the Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, 94th Cong., 2d Sess., 105 (Comm. Print 1976). Congress possessed ample authority to make this kind of change effective as of the beginning of the year of enactment. We are not persuaded by appellee's proffered distinction between his case and *Buttke* v. *Commissioner,* 625 F. 2d 202 (CA8 1980), that the taxpayer in *Buttke,* unlike appellee, would have incurred a tax anyway under the prior form of the statute. See *Estate of Lewis* v. *Commissioner,* 40 TCM 78, ¶ 80,106 P–H Memo TC (1980) (appeal pending CA5).

We think *Cooper* v. *United States,* 280 U. S. 409 (1930), is particularly close to this case. There the taxpayer, on November 7, 1921, sold stock acquired by gift from her husband a week earlier. On November 23, however, the Revenue Act of 1921 was approved and became law. The new Act provided that the income tax basis of property received by gift after December 31, 1920, was the same as the donor's basis, instead of being the fair market value of the property at the time of the gift, the rule which had theretofore prevailed.

The taxpayer sought to avoid the lower carryover basis in computing her gain on the sale, and argued that the new provision should not be applied "to transactions fully completed before enactment of the statute." *Id.*, at 411. This Court, however, rejected that contention, saying, *ibid.*:

> "That the questioned provision can not be declared in conflict with the Federal Constitution merely because it requires gains from prior but recent transactions to be treated as part of the taxpayer's gross income has not been open to serious doubt since *Brushaber* v. *Union Pacific R. Co.*, 240 U. S. 1, and *Lynch* v. *Hornby*, 247 U. S. 339."

The judgment of the United States District Court for the Eastern District of California is therefore reversed, and the case is remanded to that court with directions to enter judgment for the United States.

*It is so ordered.*