**Kenneth G. RUSH and the Fifth Third Bank, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 81–3701.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 10, 1982.

Decided Dec. 17, 1982.

Rehearing Denied Jan. 21, 1983.

Patrick Hanley and Nicholas J. Pantel, Asst. U.S. Attys., Cincinnati, Ohio, Michael L. Paup, John F. Murray, Glenn L. Archer, Jr., Robert A. Bernstein, Steven I. Frahm (argued), Chief, Appellate Section, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellant.

Kenneth G. Rush (argued), Rush, Schmenk & Henderson, Springfield, Ohio, for plaintiffs-appellees.

Before EDWARDS, Chief Circuit Judge, and KEITH and CONTIE, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment entered in favor of a taxpayer allowing deductions for certain sums set aside by a trust for charitable purposes. The facts in the case are not in dispute and are stated as follows from the brief of the United States:

On September 30, 1968, Linus E. Russell executed a trust instrument. The trust was funded with a check for $3,600,-000. The trust agreement provided for the payment of its net income to Mr. Russell during his lifetime.

Upon his death, if survived by his wife Ruth, the trust provides that its assets are to be divided into and apportioned among Trusts # 1 and # 2. All of the income of Trust # 1 is to be paid to Ruth during her lifetime, and principal may be invaded, if necessary, for her support.

The income from Trust # 2, however, is to be accumulated during Ruth's lifetime. As with Trust # 1, the trustees may invade principal and income in order to meet Mrs. Russell's needs, but only after having exhausted the assets in Trust # 1.

Upon Ruth's death, Trust # 2 is to be divided into two equal parts for the benefit of her two children. The income earned from such assets is to be paid to each child during his or her lifetime. Upon the death of the last to die of Ruth and her two children, the principal and income of Trust # 2 shall be paid equally to two charities; the Sisters of Mercy of Cincinnati, Ohio, Inc. for the use and benefit of Mercy Hospital, Springfield, Ohio, and the Board of Directors of Wittenberg College, Springfield, Ohio.

Item 13 of the Trust Agreement provides:

The Settlor reserves the right, at any time, and from time to time, by instrument in writing delivered to the Trustees, to amend, modify, or revoke this trust in whole or in part.

Prior to December 8, 1969, Linus E. Russell was able to conduct all of his personal and business affairs. On December 8, 1969, he was admitted to a hospital in Springfield, Ohio. From that date until December 22, 1969, he was in a confused state and unable to attend to his financial affairs. On December 22, 1969, Mr. Russell was transferred to the Ohio State University Hospital in Columbus, Ohio. He remained in a comatose condition until his death on February 5, 1970.

On September 27, 1973, Trust # 2 was funded and, in accordance with its terms, amounts of $42,883.01 and $84,406.41 were permanently set aside in 1973 and 1974 for the benefit of the charitable beneficiaries. Following the payment of taxes on disallowed deductions for these amounts, the trustees filed claims for refund with the Internal Revenue Service. Upon the rejection of those claims, the trustees filed suit for the refund of taxes and interest paid. In their complaint, the trustees claimed a charitable deduction on behalf of the Trust for amounts permanently set aside for charity.

On September 15, 1981, the District Court entered an opinion and order allowing the claimed charitable deductions. Judgment in conformity with the opinion was entered on the same date. From that adverse judgment, the United States brings this appeal.

The principal issue in the case is whether a trust written and funded as a revocable trust prior to October 9, 1969, is entitled to a deduction under 26 U.S.C. § 642(c) (Supp. 1982), for amounts set aside by the trustees for the benefit of two charitable institutions in the years 1973 and 1974—years in which the trust had become irrevocable as a result of the incompetency and subsequent death of the settlor.

The provision in dispute here was part of the Tax Reform Act of 1969, during which year Congress enacted an amendment to § 642(c) as follows:

(c) Deduction for amounts paid or permanently set aside for a charitable purpose.—

(1) General rule.—In the case of an estate or trust (other than a trust meeting the specifications of subpart B), there shall be allowed as a deduction in computing its taxable income (in lieu of the deduction allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instruments is, during the taxable year, paid for a purpose specified in section 170(c) (determined without regard to section 170(c)(2)(A)). If a charitable contribution is paid after the close of such taxable year and on or before the last day of the year following the close of such taxable year, then the trustee or administrator may elect to treat such contribution as paid during such taxable year. The election shall be made at such time and in such manner as the Secretary prescribes by regulations.

(2) Amounts permanently set aside. —In the case of an estate, and in the case of a trust (other than a trust meeting the specifications of subpart B) required by the terms of its governing instrument to set aside amounts which was—

(A) created on or before October 9, 1969, if—

(i) an irrevocable remainder interest is transferred to or for the use of an organization described in section 170(c) or

(ii) the grantor is at all times after October 9, 1969, under a mental disability to change the terms of the trust; or

(B) established by a will executed on or before October 9, 1969, if—

(i) the testator dies before October 9, 1972, without having republished the will after October 9, 1969, by codicil or otherwise,

(ii) the testator at no time after October 9, 1969, had the right to change the portions of the will which pertain to the trust, or . . . .

The critical interpretation involved here pertains to Paragraph 2, and particularly (A)(i) thereof. It is appellees' earnest contention, with which the District Judge agreed, that the fact that the two irrevocable set-asides for charity, with which we are currently concerned, were made well after the effective date of this Act, October 9, 1969, does not in any way serve to establish taxability, even though the entire trust was revocable *as of* October 9, 1969. The District Judge stated this argument in its most effective form, as follows:

Plaintiffs acknowledge that the trust instrument provides for a revocable trust. They submit, however, that the power of revocation was only with the settlor, and that settlor died prior to the set-asides and deductions at issue. Looking to the years for which deductions were claimed, 1973 and 1974, plaintiffs argue that at the time the set-asides were made no one could modify the trust, therefore the set-asides were interests irrevocably transferred for the use of charitable organizations.

This Court finds the argument of plaintiffs more persuasive. The word "is" in subpart (i) of § 642(c)(2)(A) indicates that the circumstances existing on the date of the transfer govern deductibility. In 1973 and 1974, when the set-asides at issue in this action were made, the trust instrument provisions directing that those amounts be ultimately used by designated charitable organizations could not be modified or revoked because the only person with authority to do so, the settlor, was dead. Therefore the set-asides were irrevocably committed to charitable use.

The government to the contrary contends that the language of the statute, albeit not completely dispositive, can be more appropriately interpreted as requiring that the charitable remainders referred to therein must be established irrevocably on or prior to October 9, 1969. While we recognize the fact that appellees' argument as adopted by the District Court can be defended with logic, we believe the government's argument concerning the interpretation of the statute itself is a much more likely version of Congressional intent.

We also believe that the legislative history of this enactment requires the interpretation which we have placed on the statutory language. An examination of legislative history must start with the first version of amendments to section 642(c) of the I.R.C. proposed by the House of Representatives as part of the Tax Reform Act of 1969. According to the House Report, all deductions for funds set-aside by trusts would be eliminated. H.R.Rep. No. 413, 91st Cong., 1st Sess. 4 (1969), U.S.Code Cong. & Admin. News, p. 1645. The "set-aside" deduction was eliminated to retain consistency with other amendments placing limits upon charitable deductions and to assure a reasonable correlation between the amount of the charitable deduction claimed and the benefits the charities would ultimately receive. H.R.Rep. No. 413, 91st Cong., 1st Sess. 56–57 (1969); *see* S.Rep. No. 552, 91st Cong., 1st Sess. 84 (1969).

While the House version of the Tax Reform Act of 1969 would have eliminated the set-aside deduction entirely, the Senate felt it appropriate to grant an exception to existing trusts established in contemplation that the set-aside deduction would remain available and which could not be modified to take the new rules into account. S.Rep. No. 552, *supra,* at 85–86.

Accordingly, the committee amendments provide that the set-aside deduction is to continue to be available for a trust established before October 10, 1969, which is required by the terms of its governing instrument to set-aside amounts, either if an irrevocable remainder interest in the trust was given to charity or if the trust could not be modified at any time after October 9, 1969, because the grantor was under a mental disability to change its terms at all times after that date.

*Id.* at 86, U.S.Code Cong. & Admin.News, p. 2115.

We believe that the Congressional purpose was to exempt those charitable set-asides which had become irrevocable before October 9, 1969. We doubt that either House of Congress ever considered the possibility that its language might be construed as making such set-aside possible if they were made in irrevocable terms after that date. While we make no contention that this construction is the only one possible, it seems to this court to fit the legislative history and the statutory language and to achieve the ultimate Congressional purpose.

We find no constitutional barrier to the interpretation of the statute set forth above. *See United States v. Darusmont,* 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981).

The judgment of the District Court is reversed.