**L.O. WARD and Myra Ward,
Plaintiffs-Appellants,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 81–1849.

United States Court of Appeals,
Tenth Circuit.

Dec. 20, 1982.

David Luther Woodward (Stephen Jones, Enid, Okl., on the briefs) of Jones, Gungoll, Jackson, Collins & Dodd, Enid, Okl., for plaintiffs-appellants.

George Hastings, Atty., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber and Jay W. Miller, Attys., Tax Div., Dept. of Justice, Washington, D.C., and David L. Russell, U.S. Atty., Oklahoma City, Okl., on the brief), for defendant-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

L.O. and Myra Ward (Wards) appeal from a judgment entered in favor of the United States. Wards initiated this action seeking a tax refund. The dispositive facts are not in dispute.

Wards are independent oil and gas producers who have operated as a sole proprietorship since 1964, when L.O. Ward first began oil and gas operations on his own account. At that time, the Wards exercised

their one-time option under 26 U.S.C.A. § 263(c) to elect to deduct as a current expense all intangible drilling costs (IDC's) associated with their drilling programs rather than capitalizing them.

During 1975 and 1976, L.O. Ward made at least four trips to Washington, D.C., where he actively lobbied on behalf of the oil and gas industry concerning the Tax Reform Act of 1976. Throughout the course of various meetings in Washington, Ward became convinced that a proposed minimum tax on IDC's would not apply to independent oil and gas producers such as himself; rather, it would only apply to taxpayers attempting to shelter unrelated income from current taxation. With this understanding, the Wards proceeded with their 1976 drilling program. They did not attempt to incorporate their business or to defer their drilling activities.

As part of the Tax Reform Act of 1976 Congress raised the minimum tax on tax preference items to 15% (26 U.S.C.A. § 56(a)) and added IDC's to the list of minimum tax preference items (26 U.S.C.A. § 57(a)(11)). Furthermore, contrary to the Wards' expectations, the Act imposed a minimum tax on all IDC's. Section 57(a)(11) provided:

> (11) Intangible Drilling Costs—The excess of the intangible drilling costs described in Section 263(c) paid or incurred in connection with oil and gas wells (other than costs incurred in drilling a nonproductive well) allowable under this chapter for the taxable year over the amount which would have been allowable for the taxable year if such costs had been capitalized and straight line of recovery of intangible (as defined in subsection (d)) had been used with respect to such costs.

Wards' gross income in 1976 from oil and gas production was approximately $2,400,-000.00. Wards' total IDC deductions were over $1,000,000.00. As a result of the minimum tax, Wards were required to pay a minimum tax of $112,988.44, representing 15% of $753,256.00, the amount by which Wards' IDC deductions exceeded the amount which could have been deducted had the IDC's been amortized and capitalized over a ten year period.

Wards timely filed their 1976 income tax return and paid $214,875.77 in income taxes. Subsequently, Wards filed a claim for refund, seeking return of the entire $112,-988.44 minimum tax paid. Wards' claim for refund was denied, and thereupon they initiated this action in district court.

Within their complaint the Wards alleged that the minimum tax on IDC's was unconstitutionally retroactive, the tax was confiscatory as applied to them, the tax was discriminatory in its applicability to individuals and not corporations, and that if constitutional, the tax was actually an excise tax and therefore deductible as an ordinary business expense.

After answering, the United States moved for summary judgment, contending "that there is no genuine issue as to any material fact and that the United States is entitled to judgment as a matter of law." [R., Vol. I, at p. 17]. Thereafter the Wards filed a similar motion.

The district court granted the United States' motion for summary judgment, finding that, *inter alia:* it has been settled for over a century that a law of Congress imposing a tax may be retroactive in its operation; almost all income tax acts adopted by Congress have been retroactive in that they applied to income earned during the calendar year, prior to the passage of the act; although Congress amended the tax in 1977 to eliminate it except to the extent net income exceeded IDC's for the taxable year, a court cannot strike down the tax as enacted in 1976 merely because it was amended in 1977; the tax is not *per se* unconstitutional; the tax is not so harsh and oppressive as to be invalid; and that the tax, which is not a new tax, is an income tax and not an excise tax.

On appeal the Wards contend: (1) the minimum tax on IDC's is unconstitutional because they had no notice prior to September 13, 1976 that the tax was to be applied retroactively to January 1, 1976, and the

tax was not foreseeable by them when they undertook their 1976 drilling program which was the voluntary act that triggered the tax; (2) the authorities relied upon by the trial court involved retroactive changes in the rate and base of existing tax preference items and not the retroactive addition of a new tax preference item; (3) the district court erroneously granted summary judgment; and (4) assuming the tax is constitutional, it can only be an excise tax and hence a deductible business expense, not an income tax.

## I.

■ The Wards contend that the minimum tax on IDC's is unconstitutional because they had no notice prior to September 13, 1976 that the tax was to be applied retroactively to January 1, 1976, and that the tax was not foreseeable by them when they undertook their 1976 drilling program which was the voluntary act which triggered the tax. Wards cite to *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938) for the proposition that a retroactive tax law is constitutional if foreseeable by the taxpayer, and unconstitutional if not. We decline to interpret *Welch* so broadly.

The Court in *Welch* did acknowledge that prior decisions had held invalid "the taxation of gifts made and completely vested before the enactment of the taxing statute ... on the ground that the nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the taxable event." Nevertheless, the Court also held:

> But there are other forms of taxation whose retroactive imposition cannot be said to be similarly offensive, because their incidence is not on the voluntary act of the taxpayer. And even a retroactive gift tax has been held valid where the donor was forewarned by the statute books of the possibility of such a levy, .... *In each case it is necessary to consider the nature of the tax and the cir-*
> *cumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.*
>
> Property taxes and benefit assessments of real estate, retroactively applied, are not open to the objection successfully urged in the gift cases.... *Similarly, a tax on the receipt of income is not comparable to a gift tax.* We can not assume that stockholders would refuse to receive corporate dividends even if they knew that their receipt would later be subjected to a new tax or to the increase of an old one.

305 U.S. at pp. 147–48, 59 S.Ct. at pp. 125–26. [Emphasis supplied].

In *United States v. Darusmont,* 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981), the Court, *citing to Welch,* upheld the retroactive application of the minimum tax provisions contained in §§ 56 and 57, *supra,* and observed:

> In enacting general revenue statutes, Congress almost without exception has given each such statute an effective date prior to the date of actual enactment.... This "retroactive" application apparently has been confined to short and limited periods required by the practicalities of producing national legislation. We may safely say that it is a customary congressional practice.
>
> The Court consistently has held that the application of an income tax statute to the entire calendar year in which enactment took place does not *per se* violate the Due Process Clause of the Fifth Amendment.

449 U.S. at pp. 296–97, 101 S.Ct. at pp. 551–52. *See also: Westwick v. Commissioner of Internal Revenue,* 636 F.2d 291 (10th Cir.1980); *Buttke v. Commissioner of Internal Revenue,* 625 F.2d 202 (8th Cir. 1980).

In rejecting a constitutional challenge to the retroactive nature of minimum taxation on tax preference items and reducing the exemption on tax preference items, the court in *Appendrodt v. United States,* 490 F.Supp. 490 (W.D.Pa.1980) stated:

There are substantial reasons for judicial deference to the retroactive application of income tax statutes. A tax is neither a penalty imposed upon a taxpayer, not [sic] a liability assumed by contract. It is a means of apportioning the cost of government. *Welch v. Henry, supra,* 305 U.S. at 146–147, 59 S.Ct. at 125. The application of a tax to the beginning of a calendar year permits Congress to better allocate that burden to those taxpayers who, in the judgment of that body, should bear it. As Judge Learned Hand observed:

> Nobody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for periods of less than twelve months; Congress has done so from the outset... Such a one may indeed complain that, could he have forseen [sic] the increase, he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities [the retroactive increase in tax rates], the system being already in operation. His is a different case from that of one who, when he takes action, has no reason to suppose that any transactions of the sort will be taxed at all. *Cohen [Cohan] v. Commissioner,* 39 F.2d 540, 545 (2d Cir. 1930).

490 F.Supp. at p. 492.

We hold that the district court did not err in finding that the minimum tax on IDC's was constitutionally retroactively enacted, and that the tax was not so harsh and oppressive as to be invalid. We also concur in the district court's conclusion that the tax was foreseeable by the Wards:

> The addition of IDC's as an item of minimum tax preference had been under discussion since the original report of the House Ways and Means Committee, November 12, 1975. Although the final bill passed reflected a compromise between the House and Senate proposals, there was never any question that the purpose of Section 301 of the original House Bill was to assure that high income individuals pay at least some minimum tax. This was to be accomplished by changing the tax rate, lowering certain deductions, and adding new tax preference items....

> A realistic evaluation of the history of income tax laws in this country simply does not support the position that this taxpayer had absolutely no reason to believe that any transaction of this sort would be taxed at all. The Legislative History of Title III of the House Bill (10612) did provide notice that intangible drilling costs would be an additional item of tax preference.

> *    *    *    *    *    *

> It would be unrealistic for a taxpayer to rely upon the passage of a particular version of any tax bill before Congress. Plaintiffs' lobbying efforts and trips to Washington are an indication that the taxpayers had notice that they might be affected by the bill. Once Plaintiffs were aware that intangible drilling costs were to be added to the list of minimum tax preference items, they should not have relied on Congress to pass a version of the bill which would permit them to escape the tax.

[R., Vol. I at pp. 258–59.]

## II.

■ Wards contend that a minimum tax on IDC's, if constitutional, must be considered an excise tax, and hence a deductible business expense, and not an income tax.

In finding that the minimum tax on IDC's was an income tax and not an excise tax, the district court observed:

> Plaintiffs have directed the Court's attention to several articles which theorize that the Courts are wrong in finding the tax in question to be an income tax. They argue that a more thorough analysis of the tax shows it to be a direct tax or an excise tax.[1] Although the commentators' presentation is interesting from a theoretical viewpoint, the Court cannot ignore the plain language and intent of Congress and the holdings of other courts.

The clear language and intent of Congress was noted in *Lubus v. United States,* 573 F.2d 1292 (2nd Cir., 1978):

"By its clear wording, Section 56 of the Internal Revenue Code imposes a tax '[in] addition to the other taxes' imposed under the income tax provisions. The Legislative History of the provision supports this language for congress's intention was not to give tax relief, but rather to impose an additional tax on high income individuals with large amounts of non-wage income."

The Internal Revenue Service has consistently treated the tax as an income tax. Rev.Rul. 77–396, 1977–2 C.B. 86. Additionally, all of the courts which have considered this question have found the minimum tax to be an income tax. *See Graff v. Commissioner, supra* [74 T.C. 743], and the cases cited therein.[2] It is well settled that the concept of "income" for tax purposes is extremely broad. *Eisner v. Macomber,* 252 U.S. 189 [40 S.Ct. 189, 64 L.Ed. 521] (1920). The tax laws have been liberally interpreted without restrictive labels or limitations as to the source of taxable receipts. The Court finds that the tax in question is a tax on economic benefit as defined in *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955) and accordingly, is an income tax.

[1] The 1976 Retroactive Amendment of the Minimum Tax: An Exercise of the Taxing Power or a Taking of Property? 32 Baylor L.Rev. 165 (1980). The Minimum Tax—Is It A Deductible Excise Tax? 31 Baylor L.Rev. 9 (1979); Graff, Rev.Rul. 78–61 and Inland Steel Company. What is the Add-On Minimum Tax, *TAXES—The Tax Magazine,* 161 (Mar. 1981).

[2] Although the issue was not addressed directly, the Supreme Court in *Darusmont, supra,* obviously considered the tax to be an income tax and applied the customary analysis for income taxes to determine its constitutionality.

[R., Vol. I, at pp. 257–58.]

We hold that the district court did not err in finding that the minimum tax on IDC's was an income tax, and that as an income tax, it is specifically barred as a deduction under 26 U.S.C.A. § 275. A similar contention was rejected in *Wyly v. United States,* 662 F.2d 397 (5th Cir.1981) wherein the court held:

Although the taxpayer's position has a certain surface appeal, we agree with the Service and with the district court that the minimum tax is a tax on income and is, accordingly, constitutional. . . .

But apart from the language of the statute itself, the nature of the minimum tax supports the Service's position that it is a tax on income. As explained in the House Report accompanying the passage of Section 301 of the Tax Reform Act of 1969, the minimum tax was "designed to reduce drastically the ability of individuals to escape payment of tax on economic income." H.R.Rep. No. 91–413, Pt. 1, 91st Cong., 1st Sess. 78 (1969–3 C.B. 200, 249), [1969] U.S.Code Cong. & Admin. News, p. 1645, 1725. By imposing, "in addition to the regular income tax," a minimum tax on "tax preference income in excess of the specified exemption" S.Rep. No. 91–552, 91st Cong., 1st Sess. 113 (1969–3 C.B. 423, 496), [1969] U.S. Code Cong. & Admin.News, p. 1645, 2144, Congress intended to increase the income tax liability of persons whose regular income tax liability was disproportionately reduced as a consequence of claiming preferential tax treatment allowed with respect to special items of income or deductions. . . . The minimum tax, therefore, is clearly imposed upon an individual's income, and the fact that it may be more closely tied to "economic," rather than taxable, income does not serve to change this result. *Graff v. Commissioner, id.* at 766; *Kolom v. Commissioner,* 71 T.C. 235, 250 (1978), *aff'd,* 644 F.2d 1282 (9th Cir.1981).

662 F.2d at p. 405.

### III.

We have carefully considered Wards' remaining allegations of error and find them to be without merit.

AFFIRMED.