CHARLES and MARY IVEY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Ivey v. Commissioner
Docket Nos. 695-78, 696-78, 697-78, 698-78, 3466-79, 5466-79, 4140-80.
United States Tax Court
T.C. Memo 1983-273; 1983 Tax Ct. Memo LEXIS 514; 46 T.C.M. (CCH) 172; T.C.M. (RIA) 83273; May 17, 1983. Towner Leeper, for the petitioners. John F. Eiman, for the respondent. GOFFE
MEMORANDUM OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in petitioners' Federal income taxes to which petitioners assigned error in their petitions: Petitioners
Docket No.
Year
Amounts
Charles & Mary Ivey
695-78
1973
$4,268.00
1974
5,948.00
Harold & Dorothy Ivey
696-78
1973
2,262.00
James & Joanne Ivey
697-78
1973
1,700.00
1974
31.00
John & Rosalie Ivey
698-78
1973
2,082.00
1974
1,878.00
Charles & Mary Gaither
3466-79
1976
6,688.04
John & Betty MacGuire
5466-79
1974
64,250.37
1975
6,900.92
John & Betty MacGuire
4140-80
1976
76,900.92
*515 These cases have been consolidated for trial, brief and opinion. After concessions by the parties, there remain two issues for decision. The first is whether adjoining tracts of land donated to Texas A & M University must be valued separately or as a unit for purposes of determining the donors' charitable contribution deduction. The second issue is whether Congress' retroactive elimination of two items (previously earned regular tax carryovers and deductions for one-half of currently earned regular tax) in the computation of the minimum tax under section 56 [2] is an unconstitutional deprivation of due process under the Fifth Amendment. This case has been submitted fully stipulated; the stipulations of fact and the stipulated exhibits are incorporated herein by this reference. All petitioners resided in Texas when they filed their petitions in these cases. Petitioners in each docket No. filed timely joint Federal income tax returns. The facts of this case are simple. Texas A & M University (A & M) is an organization described in section 170(c)(2). In early August of 1972, A & M President *516 Jack Williams and Dean of Agriculture H. O. Kunkel met with the Advisory Committee of Fifty to the Texas A & M University Agricultural Research Center at El Paso. A & M had established an agricultural experiment station in 1942 near El Paso, Texas. The purpose of the meeting was to commit A & M to upgrading this experiment station to a full research center. To do this, a better location was required. John Ivey, a petitioner in this case, was chairman of this Advisory Committee. He was asked to locate suitable lands for contribution to A & M for this purpose. John Ivey came to A & M at the end of August to enroll a daughter. He brought with him two maps showing two potential locations of property for the research center. The chosen site was three adjacent unimproved properties covering 43.078 acres, owned by the Iveys, Gaithers and MacGuires, which were located in an area of El Paso suitable for the proposed research center. Their interests were as follows: K. B. Ivey Investments [3]
15.007 acres
Gaither
13.071 acres
MacGuire
15 acres
*517 They had jointly decided to donate their respective tracts of land to A & M and did so at various times during 1973 and 1974. Each executed separate deeds of gift conveying the interests to A & M as follows: Interest Conveyed
Date of Conveyance
a) Undivided 1/2 interest in Ivey
tract as of
2/26/74
b) Undivided 1/2 interest in Ivey
tract as of
12/24/73
c) Undivided 1/2 interest in
Gaither tract as of
12/26/73
d) Undivided 1/2 interest in
Gaither tract as of
3/04/74
e) MacGuire tract
5/20/74
Each deed to A & M provided that the grantors "GIVE, GRANT and CONFIRM unto THE STATE OF TEXAS for the use and benefit of the BOARD OF DIRECTORS of THE TEXAS A & M UNIVERSITY SYSTEM (hereinafter called "Grantee") in establishing thereon facilities for research and/or education by THE TEXAS A & M UNIVERSITY SYSTEM…." In addition, the MacGuire deed of gift expressly provided conditions precedent to the completion of the gift as follows: This gift is conditioned upon and title hereunder shall vest only when (and if) the Board of Directors of the Texas A & M University System approves and accepts within 30 months from the date hereof preliminary architectural *518 plans for construction of a research and development center for the Texas A & M University System on the property above described, or related to, or on that property owned by or being acquired by Grantee, and causes the certified copy hereinafter described to be filed for record as herein provided. A certified copy of the Board of Directors' Minute Order in recordable form providing for such approval and acceptance shall, when (and if) filed for record in El Paso County, Texas within 30 months from the date hereof, be conclusive and unimpeachable evidence that the conditions precedent have been satisfied and performed, and shall be binding upon Grantors, their heirs, devisees, personal representatives and assigns. Upon filing said certified copy for record, fee simple title to the property herein described, together with Grantee's right to possession, shall immediately vest in Grantee, subject only to the matters hereinafter stated. If said certified copy is not filed for record within 30 months from the date hereof, then this deed shall be null and void and no title shall pass hereunder. The parties hereto, Grantors in executing and delivering this gift deed, and Grantee in *519 accepting it, expressly provide that the approval and acceptance of said preliminary architectural plans and the filing of said certified copy are and shall be conditions precedent to the vesting of title and possession, rather than conditions subsequent. A & M timely satisfied the conditions precedent on November 26, 1974 and recorded its approval of preliminary architectural plans for the research center. In computing their Federal income tax for the taxable years in issue petitioners reported the fair market value of their gift of land as if the three separate tracts were one, thereby increasing its fair market value. The Commissioner recomputed the petitioners' charitable contribution deduction by valuing each petitioners' gift as a separate parcel of land. Depending upon the determination as to the proper valuation method, the fair market value of the properties will be as follows: Valuation
Separate
Unified
Ivey
a) $42,900.00
$236,220.66
b) 42,900.00
Gaither
c) 54,285.00
205,887.24
d) 54,585.00
MacGuire
e) 90,090.00
236,492.10
In January 1976, petitioners John and Betty MacGuire, husband and wife, docket No. 4140-80 sold *520 common stock of Aztec Oil and Gas, realizing long-term capital gain of $3,560,249 which they properly reported on their 1976 income tax return. Prior to January 1, 1976, petitioners John and Betty MacGuire had a carryover of unused regular tax available for carryover into 1976 for use in any computation of minimum tax liability. Petitioners argue that they are entitled to a charitable deduction for the value of "the complete trust" donated to Texas A & M. They rely primarily on Rev. Rul. 81-253, 1981-2 C.B. 187. The issue in that revenue ruling was whether minority discounts should be allowed in valuing, for Federal gift tax purposes, three simultaneous transfers of all the stock in a closely held family corporation to the donor's three children. Petitioner, in particular, points to language in the ruling which states that no minority discount should be allowed where a controlling interest in stock is owned by family members, and there is a "unity of ownership and interest," because it is unlikely that the family would not act as a unit in controlling the corporation. This relates directly to the value of family member shares because they are part of the controlling *521 interest and should be valued accordingly. The ruling concludes that where a controlling interest in stock is owned by a family, the value per share of stock owned by one family member is the same as stock owned by any other family member and that value is the same as would exist if all the stock were held by one person. We have criticized the rationale of Rev. Rul. 81-253, supra.Estate of Andrews v. Commissioner,79 T.C. 938 (1982). We decline to decide whether the concepts involved in the valuation of minority stock interests are applicable to the nonsimultaneous transfers of property to one donee for a sole purpose use. Nor do we find it necessary to decide whether, as petitioners argue, the gifts of property were conveyed in such a manner as to create a resulting trust under the laws of the State of Texas. We look instead to the definition of fair market value. Section 1.170A-1(c), Income Tax Regs., states in relevant part that when a charitable contribution is made in property other than money, "the amount of the contribution *522 is the fair market value of the property at the time of the contribution * * *." Section 1.170A-1(c)(2), Income Tax Regs., provides that the fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts. [Emphasis added.] In determining the fair market value we must consider the highest and best use, of all uses, for which the property may be potentially suitable and adaptable. Respondent has stipulated to the fact that if the property is viewed as a unit its fair market value is increased substantially. The record clearly demonstrates that both the donorpetitioners and the recipient A & M had knowledge of the very relevant fact that the three adjoining tracts would be jointly donated to the university. The "package" which John Ivey put together made the prospective site more valuable to A & M and was a factor contributing to A & M's acceptance of the site. A willing buyer desiring a similar tract of land would have been willing to pay more for such a package. Conversely, petitioners, *523 cognizant of the highest and best use to which the property would be put, would rightfully have bargained for a higher sale price. This is just common sense and we cannot ignore the economic reality of the transaction. Accordingly, we hold for petitioners and find that the fair market value of the property donated to A & M should be valued as a whole in light of the particular known facts and circumstances. The second issue for our decision is whether the retroactive disallowance of deductions from tax preference items in computing the minimum tax is a deprivation of vested property rights without due process. Section 56 imposes a minimum tax on certain items of tax preference. Congress enacted this minimum tax in 1969 as part of the Tax Reform Act of 1969 [4] because of its concern that under then existing law individuals with substantial economic income could "escape" a significant amount of regular income tax through tax exempt issues and other special deductions. For example, both individuals and corporations paid a regular income tax on only part of their long-term capital gains. [5] Under this new tax, certain items of income were designated as items of tax preference *524 and were taxed in addition to the regular personal or corporate income tax. This new Code section 56 established a 10 percent rate of taxation on these items of tax preference. The amount subject to the 10 percent rate was computed by reducing the total of the items of tax preference by a $30,000 exemption and then further reducing that amount by the amount of regular tax paid. Regular taxes not used to offset items of tax preference in the current year could be carried over for seven subsequent years. Taxpayers who paid significant amounts of regular tax could often avoid any tax on the tax preference items. Congress, concerned that their goal of taxing these so called items of tax preference was not being accomplished, determined to increase the effective tax rate in the tax preference items and make the tax a truly alternate minimum tax. It did so by increasing the tax preference *525 rate, reducing the exemption, adding new preferences, and by curtailing the extent to which regular taxes could be used to escape the minimum tax. On October 4, 1976, they amended section 56 and eliminated, retroactive to 1975, the use of tax carryovers by taxpayers in computing their minimum tax. [6] This elimination of carryovers of unused regular tax and current regular tax as an offset is consistent with the Congressional intent of increasing the effective rate of tax on tax preference items. The Supreme Court has already determined that the retroactive decrease in the allowable exemptions (from $30,000 to $10,000) and the increase in the rate (from 10 percent to 15 percent) were not so harsh and oppressive as to be a denial of due process. United States v. Darusmont,449 U.S. 292, 299 (1981). The Supreme Court held that the two provisions challenged were not a new tax, which might have been unconstitutional, but were merely part of an increase in the effective rate of an existing income tax. Petitioners argue [7] that Darusmont did not consider the role of the unused carryovers and the exclusion of one-half *526 of current regular tax in the tax computation and that inasmuch as these items are vested property rights, their retroactive denial constitutes an unconstitutional new tax. We disagree. The taxpayer in Darusmont made the same argument. This is not a new tax not in existence at the time of petitioners' transaction. Petitioners capital gains could have been subject to the minimum tax even if the law had not been changed. Nor do petitioners have a vested property right in these carryovers and deductions. These carryovers and deductions were relevant only for purposes of calculating the amount of tax paid and were deductible by virtue of legislative grace. Congress saw fit to raise the rate of tax and did so by eliminating a previously allowed offset. Accordingly, we hold for respondent on this issue. [8]
*527 Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Harold and Dorothy Ivey, docket No. 696-78; James and Joanne Ivey, docket No. 697-78; John and Rosalie Ivey, docket No. 698-78; Charles and Mary Gaither, docket No. 3466-79; John and Betty MacGuire, docket Nos. 5466-79 and 4140-80.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. During the taxable years in issue the Ivey tract was owned by a limited partnership, K.B. Ivey Investment Co., Ltd. The petitioner-husbands were limited partners, their interests were as follows: ↩
Percent Ownership in K.B.
Docket No.
Petitioners
Ivey Invest. Co., Ltd.
695-78
Charles Ivey
7.665
696-78
Harold Ivey
7.665
697-78
James Ivey
7.665
698-78
John Ivey
7.665
4. Pub. L. 91-172, 83 Stat. 487, 480. ↩
5. H.R. Rept. 94-658, 94th Cong., 2d Sess., 1976-3 C.B. (Vol. 2) 130-132, amendments apply to tax preferences for taxable years beginning after December 31, 1975; S. Rept. 94-938, 94th Cong., 2d Sess., 1976-3 C.B. (Vol. 3) 108-114.↩
6. Pub. L. 94-455, 90 Stat. 1520, 1549.↩
7. Petitioners also argue that they did not have adequate notice of the change in law when they sold their stock in January 1976. The taxpayers in United States v. Darusmont,449 U.S. 292, 296 (1981), made a similar claim for their July 1976 transaction. The Supreme Court dismissed this claim by noting that, assuming arguendo personal notice is relevant, the proposed rate increases and retroactive effective date had been under public discussion for almost a year before its enactment. Darusmont↩ at 299. 8. See also Wyly v. United States,662 F.2d 397 (5th Cir. 1981); Sullivan v. Commissioner,76 T.C. 1156 (1981); Ostheimer v. Commissioner, T.C. 1981-636; Ledogar v. Commissioner,T.C. Memo. 1981-498, affd. without published opinion 697 F.2d 292↩ (2d Cir. 1982).