**Michael J. MOSTOWY and Josephine Mostowy, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 92–5014.**

United States Court of Appeals, Federal Circuit.

June 11, 1992.

Neal A. Sanders, Law Offices of Neal A. Sanders, Butler, Pa., argued, for plaintiffs-appellants.

Teresa E. McLaughlin, Atty., Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With her on the brief were James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen and Ann B. Durney, Attys.

Before NIES, Chief Judge, RICH and ARCHER, Circuit Judges.

PER CURIAM.

The Mostowys appeal the judgment of the United States Claims Court dismissing their suit for failure to state a claim. The appellants seek a refund on their 1988 federal income taxes, based upon an allegedly unlawful disallowance of a capital gains deduction. The Mostowys contend that income from a coal lease on their farmland was entitled to the capital gains preference provided under a "grandfather" clause in the 1986 Tax Reform Act, Pub.L. No. 99–514, 100 Stat. 2085 (1986), which retained capital gains treatment during a transition period for dairy farmers.

Section 301 of the 1986 Act, 100 Stat. 2216–2218, repealed the preferential treatment for long-term capital gains for non-corporate taxpayers, effective December 31, 1986. The "grandfather" provision relied upon by the Mostowys is found at Section 406 of the Act, 100 Stat. 2225:

SEC. 406. RETENTION OF CAPITAL GAINS TREATMENT FOR SALES OF DAIRY CATTLE UNDER MILK PRODUCTION TERMINATION PROGRAM.

The amendments made by subtitles A and B of Title III [containing Sections 301 and 311 of the 1986 Act] shall not apply to any gain from the sale before October 1, 1987 of dairy cattle under a valid contract with the United States Department of Agriculture under the milk production termination program to the extent such gain is properly taken into

account under the taxpayer's method of accounting during 1987.

The Mostowys assert that the above exception, although expressly limited to dairy farmers was intended to cover capital gains of all farmers, including the gain they enjoyed from a coal lease. To show that the limitation to dairy farmers only was a mistake, they propose to take discovery from members of Congress and their staff to obtain evidence that section 406 was not written as Congress intended. In addition, the Mostowys argue that if this provision does not grandfather coal leases, then it violates their due process and equal protection rights under the Fifth Amendment.

Upon review by this court, we find that the above issues and all others here raised by the Mostowys were concisely, thoroughly, and persuasively addressed by Judge Yock in his opinion (copy attached) dismissing their complaint. Accordingly, we adopt his opinion as the decision of the court.

AFFIRMED.

## APPENDIX

YOCK, Judge.

This federal income tax refund case is currently before the Court on the Government's motion to dismiss for failure to state a claim upon which relief can be granted, USCC Rule 12(b)(4). After oral hearing and for the reasons stated herein, the defendant's motion is granted and the plaintiffs' complaint will be dismissed.

### Facts

The relevant facts of this case are not in dispute. The plaintiffs, Michael J. Mostowy and Josephine Mostowy, entered into a contract in 1985 whereby they received payments in return for allowing a third party to mine coal on their property. In 1985, plaintiffs were able to exclude sixty percent of these payments as capital gain income under 26 U.S.C. § 1202 (1982). The next year, in 1986, Congress passed the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (1986), which repealed section 1202 of the Internal Revenue Code by way of section 301(a) of the Tax Reform

Act of 1986, Pub.L. No. 99–514, 100 Stat. 2216 (1986). In 1988, the Mostowys received another payment from coal mining based on the 1985 contract. That same year, plaintiffs paid income tax in the amount of $94,929. In 1989, plaintiffs filed an amended tax return for 1988 seeking a refund of $60,309, plus interest. The refund was claimed based on the capital gains deduction plaintiffs sought for the 1988 payments they received under the 1985 contract. On September 13, 1990, the Internal Revenue Service disallowed the Mostowys' claim.

On November 14, 1990, plaintiffs filed a complaint with this Court claiming that the disallowance of their capital gains deduction violated the Due Process and the Equal Protection clauses of the Fifth Amendment to the United States Constitution and the Omnibus Taxpayer Bill of Rights, Technical and Miscellaneous Revenue Act, Pub.L. No. 100–647, §§ 6226– 6247, 102 Stat. 3342, 3730–3752 (1988). Defendant filed a motion for judgment on the pleadings asserting that the complaint did not state a claim upon which relief may be granted.

### Discussion

The Mostowys claim that they are entitled to relief under several theories. They allege violations of the Due Process and Equal Protection clauses of the United States Constitution and the Taxpayer Bill of Rights.

Plaintiffs first argue that the repeal of section 1202 by section 301(a) of the Tax Reform Act of 1986 causes a retroactive application of a new law, section 301(a), to income from a pre-existing contract and thereby violates the Due Process clause of the Fifth Amendment. This argument is quite similar to the claim of the plaintiff in *Picchione v. Commissioner*, 440 F.2d 170 (1st Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 66, 30 L.Ed.2d 57 (1971). *Picchione* also involved a contract for sale where the taxpayer received the proceeds in separate payments in different years, and the income was subject to varying tax treatment when the tax laws changed during the peri-

od of payment. The court ruled against the plaintiff on the grounds that "[w]hen a taxpayer chooses to spread the realization of income from a transaction over a number of years, as taxpayer did here, the government does not violate due process by taxing that income under the revenue laws in effect in the year in which it is received and reported." *Picchione*, 440 F.2d at 173. This case is analogous to plaintiffs' position here. They spread the realization of the income from the 1985 coal contract over several years and the tax laws changed during that time. Accordingly, there was no violation of the Mostowys' due process rights.

■ Also section 301(a), which repealed special treatment for capital gains, was not applied retroactively as plaintiffs aver. The Mostowys received the income at issue in 1988, after the tax law was changed, not before the 1986 change. Obviously, tax laws change over the years. As stated in *Fortune v. United States*, 4 Cl.Ct. 670, 671 (1984):

> "[i]t is well settled that deductions or exclusions from gross income are matters of legislative grace and are not matters of right or equity. *See New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). Accordingly, deductions and exclusions can be and are changed from time to time by Congress. There is nothing, *per se*, illegal, or discriminatory in this regard. Changes in the tax laws from year to year are inevitable, expected, and lawful."

■ Plaintiffs also base several of their arguments on section 406 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2225 (1986). This section retains special treatment for capital gains resulting from the sale of dairy cattle by dairy farmers under the Milk Production Termination Program which were taken into account under the taxpayer's method of accounting after January 1, 1987 and before September 1, 1987. The Mostowys claim that this exemption covers income to all farmers and, therefore, applies to them. This claim fails on several points. First, the plain language of the statute limits it to sales under the Milk Production Termination Program. The Mostowys' income is from payments they received from coal mining on their property. Second, section 406 is limited to income received in 1987. The gain the Mostowys wish to deduct was received in 1988, clearly beyond the chronological span of the section 406 exemption. Therefore, under the plain meaning of section 406, plaintiffs are not entitled to a capital gains deduction.

■ Next, plaintiffs argue that Congress, in a rush to pass new tax legislation, simply did not have the time to write section 406 as it intended. The Mostowys claim Congress actually meant to protect the financial interests of all farmers through this section. Although plaintiffs claim that there is legislative history which confirms their interpretation, they have failed to cite any relevant legislative history for section 406. Instead, they ask this Court for discovery in order to obtain affidavits from Congressmen regarding this section.

■ However, in interpreting section 406, this Court must follow "the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 406 does not contain any facially obvious ambiguities that would require this Court to refer to the legislative history to clarify the section's meaning. The section refers solely to dairy farmers, who participated in a specific federal program, the Milk Production Termination Program, and covers gains from sales under that program in 1987. It could hardly be more precise. Therefore, discovery regarding what some members of Congress were individually thinking is unnecessary to this Court's interpretation and application of section 406 because "arguments as to the general in-

tent or mind set of Congress cannot overturn the clear language of a specific provision." *AFL–CIO v. Donovan*, 757 F.2d 330, 344 (D.C.Cir.1985).

In the alternative to their requested broader interpretation of section 406, plaintiffs request that this Court declare section 406 unconstitutional on the grounds that it creates a discriminatory classification violating plaintiffs' Fifth Amendment right to equal protection. The classification objected to is the special treatment given by section 406 to dairy farmers who participated in the Milk Production Termination Program.

Plaintiffs bear a heavy burden of proof on this issue; one which they have not even begun to meet. "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). Also, for tax laws in particular, "Congress may provide a tax benefit for a particular class of taxpayers provided the classification bears a rational relation to a legitimate governmental purpose." *Wheeler v. United States*, 768 F.2d 1333, 1337 (Fed.Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 891 (1986). Plaintiffs have only offered a vague assertion of unfairness regarding section 406. The Government cited the legislative history for the Milk Production Termination Program under the Food Security Act, Pub.L. No. 99–198, 99 Stat. 1354 (1985), indicating its goals are stabilizing milk production and lowering costs of milk subsidies. H.R.Rep. No. 271, 99th Cong., 1st Sess. III, 14 (1985) *reprinted in* 1985 U.S.Code Cong. & Admin. News 1103, 1118. This suggests that the classification of capital gains by dairy farmers under the Milk Production Termination Program in section 406 had a rational relation to a legitimate governmental purpose, the purposes of the Milk Production Termination Program. Since the Government has proposed one justification for the classification which this Court finds reasonable, the plaintiffs cannot meet their burden of attacking every conceivable basis for section 406 as

required by *Madden v. Kentucky*. Therefore, plaintiffs' equal protection claim must fail.

Initially, plaintiffs also alleged a violation of the Taxpayer Bill of Rights, but they seem to have abandoned this claim. Also, they have never indicated which particular section of the Taxpayer Bill of Rights they believe has been violated. It is not within the duties of this Court to guess upon which section plaintiffs base their claim. However, a review of the Taxpayer Bill of Rights shows that it deals primarily with procedural rights of taxpayers in their administrative dealings with the Internal Revenue Service. Plaintiffs have not introduced any facts that state a claim regarding procedural dealings with the Internal Revenue Service. Therefore, this Court cannot find that the plaintiffs have stated a claim under the Taxpayer Bill of Rights.

In oral argument, plaintiffs relied on two cases and these can be disposed of summarily. First, *WHYY v. Glassboro*, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968). That case raised an issue under the Fourteenth Amendment only. The Fourteenth Amendment is not implicated here as this is a federal taxation issue and involves no state action. As for *United States v. Darusmont*, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981), it dealt with the retroactive application of an income tax statute. As we noted earlier, the tax statute was not applied retroactively here.

The standard for judgment on the pleadings is stringent. A complaint should be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). "A motion for judgment on the pleadings should be denied unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim." *Branning v. United States*, 215 Ct.Cl. 949, 950 (1977). Here, plaintiffs have stated no facts which support their claims and this Court cannot anticipate any

state of facts which would do so. Therefore, the Court must grant defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss for failure to state a claim is granted and plaintiffs' complaint should be dismissed.

Each party is to bear its own costs.