OPINION OF THE COURT
David B. Saxe, J.
Plaintiffs, owners of rent-stabilized multiple dwellings, chai *364 lenge the constitutional integrity of a local law which assesses a $10 per unit retroactive annual fee. The issue in this action is whether the two-year period of retroactivity is so unfair that it infringes upon the constitutional rights and legitimate expectations of the plaintiffs. For the reasons discussed below, the court believes that it does.
Plaintiffs initially moved, pursuant to CPLR 6301, for a preliminary injunction restraining the defendant City of New York from implementing Local Laws, 1986, No. 26 of the City of New York by prohibiting the issuance of any statements or making any other attempts at collection of a $10 per year per unit fee from owners of rent-stabilized apartments for the years 1984 and 1985. The court issued a temporary restraining order and thereafter plaintiffs moved for summary judgment (CPLR 3212) declaring Local Law No. 26 of 1986 to be unconstitutional as an improper retroactive assessment in violation of the due process and equal protection clauses of the Federal and State Constitutions; and invalid because it conflicts with its own enabling legislation. The defendants also cross-moved for summary judgment declaring that Local Law No. 26 is constitutional and proper.
During the pendency of these applications, plaintiffs amended their complaint to include a request for a declaration that Local Law No. 26 was improperly enacted due to lack of notice of the public hearing prior to the Mayor’s consideration of the bill as required by Municipal Home Rule Law § 20 (5) and Administrative Code of the City of New York § 38b-1.0. The city at first contested this additional claim. But, companion legislation, Local Law No. 24, enacted under the same factual circumstances as Local Law No. 26, was declared invalid for a failure to give proper notice pursuant to Municipal Home Rule Law § 20 (5). (See, 41 Kew Gardens Rd. Assoc. v Tyburski, NYLJ, Oct. 3, 1986, p 16, col 2, affd 124 AD2d 553, lv denied 68 NY2d 612.)
The city by Local Law No. 66 of 1986 on December 8, 1986 reenacted Local Law No. 26 as Administrative Code § 26-517.1 (c) to obviate the notice problems with the original promulgation. Thus, the claim that there was no notice furnished of a public hearing is academic.
In response, the plaintiffs have moved, pursuant to CPLR 3025 (b), to amend the complaint to declare Local Law No. 66, the new version of the statute, unconstitutional and contrary to the enabling legislation. Leave to amend shall be freely *365 given in the absence of prejudice (CPLR 3025 [b]; Rife v Union Coll., 30 AD2d 504). No prejudice can be demonstrated since the amendment merely updates the facts which were always known to the defendants and this amendment will facilitate an expeditious determination of the validity of the statute. Consequently, leave to amend as proposed is granted. The court will, therefore, consider the arguments raised as to Local Law No. 26 in evaluating Local Law No. 66.
Plaintiffs are the owners of multiple dwellings located in The Bronx, Brooklyn and Manhattan. All the buildings owned by them are subject to and governed by the Emergency Tenant Protection Act of 1974, as amended, and the Rent Stabilization Law of 1969. In 1983, the Omnibus Housing Act (L 1983, ch 403) was enacted transferring the rent-stabilization program to the control of the New York State Division of Housing and Community Renewal (DHCR) (see, McKinney’s Uncons Laws of NY § 8628 [Emergency Tenant Protection Act of 1974 § 8; L 1974, ch 576, § 4, as amended by L 1983, ch 403, § 3]). The transfer became effective on April 1, 1984. Under Unconsolidated Laws § 8628, the City of New York could adopt a local law imposing upon owners of buildings subject to rent stabilization an annual charge not exceeding $10 per unit per year to defray the costs of the administration of rent regulation.
Subsequently, on December 19, 1985, the City Council adopted Local Law No. 95 adding section YY51-6.0.7 to the Administrative Code which imposed upon owners of rent-stabilized buildings a $10 per unit annual fee. The statute was to take effect immediately and the annual fees imposed were to apply only prospectively.
Then, in July 1986, the City Council amended Local Law No. 95 by adding a new subdivision (c) to Administrative Code § YY51-6.0.7 which provided for the imposition of a $10 per unit annual charge retroactive to April 1, 1984. As noted above, this enactment was not made in accordance with Municipal Home Rule Law § 20 (5) and Administrative Code § 38b-1.0 (41 Kew Gardens Rd. Assoc. v Tyburski, supra). However, reenactment occurred in December, 1986, in the form of Local Law No. 66.
Plaintiffs assert that Local Law No. 66 is unconstitutional because its imposition of retroactive fees violates the precepts of due process, since there was no public policy rationale for the enactment, the fees imposed seek to cover an unreason *366 ably long time period and frustrate a building owner’s reliance on a prior local law. Defendants contend that it was appropriate and reasonable to place the costs of rent regulation upon the landlords who utilized the system; and, carrying the assessment back would not work a substantial burden or frustrate the expectations of multiple dwelling owners, who under the prior city system of rent regulation paid a yearly fee to the Rent Stabilization Association to defray administrative costs.
Plaintiffs argue that the primary flaw in Local Law No. 66 rests with the unreasonable delay in its enactment. Certainly, had the city acted promptly in April of 1984 or shortly after that time, when it first had an opportunity to impose such fees, the resulting system of assessment would present no problem. Where, however, the city inexplicably fails to pursue its right to enact local legislation and then initially adopts a prospective assessment, the impact on the viability of retroactive fees presents complex and difficult issues.
Legislation having retroactive effect may offend the due process clause if, upon balancing the considerations on both sides, it appears that retrospective application would be unreasonable. (Chase Sec. Corp. v Donaldson, 325 US 304; Valladares v Valladares, 80 AD2d 244, affd 55 NY2d 388; Tucker v Tucker, 80 AD2d 244, mod on other grounds 55 NY2d 378.) In analyzing a due process challenge to a retroactive law the court must weigh two major factors: "whether the law is reasonably calculated to serve a compelling public interest and the extent to which retrospective application creates unfairness.” To this end the court must review "considerations of fairness to the parties, reliance on pre-existing law, the extent of retroactivity and the nature of the public interest to be served by the law.” (Matter of Chrysler Props. v Morris, 23 NY2d 515, 518; Valladares v Valladares, supra.)
Here, the preexisting law consists of Local Law No. 95 of 1985 and the enabling statute, Laws of 1983 (ch 403). Laws of 1983 (ch 403) speaks in prospective terms and calls for the payment of fees to the city in the future and the right of the city, if it chose, to collect a fee from multiple dwelling owners to defray subsequent costs. There is no indication from the language of the statute that the Legislature intended retroactive application of the law and under the rules of statutory construction none should be implied. (McKinney’s Cons Laws of NY, Book 1, Statutes § 51; Matter of Ayman v Teachers’ Retirement Bd., 9 NY2d 119.)
*367 Consistent with the prospective intent of the enabling statute, the city enacted Local Law No. 95 providing for the collection of a $10 annual fee per unit in the future. This belated enactment first occurred a year and a half after the city obtained the discretion to pass on the costs of rent regulation to the property owners. The failure to act promptly instilled in the owners and the subsequent purchasers of residential buildings the expectation that the costs of the administration of rent stabilization by DHCR would be borne by the city alone for the first year and a half. This is particularly true, where, as here, the City Council considered retroactivity as proposed by the Mayor in the original draft legislation and then rejected such approach in favor of the prospective fees found in Local Law No. 95. (See, minutes of City Council of City of NY Comm on Fin, Dec. 18, 1985.) The city further evidenced this expectation when its budgets for fiscal years 1984 and 1985 were certified to have sufficient revenues to cover costs as required by the New York State Financial Emergency Act for the City of New York § 8 (McKinney’s Uncons Laws of NY § 5410 [L 1975, ch 868, § 2]) without resort to any fees from the landlords. Indeed, during these years, the city ran a budget surplus and the additional revenues that could have been granted by a fee pass-along were not necessary to balance the budget and the moneys to be derived from such a retroactive pass-along would not defray administration costs, but rather admittedly would go into general revenues. (See, testimony of Cheryl Ishmael, Deputy Director of Off of Mgt and Budget, minutes of City Council of City of NY Comm on Fin, Dec. 18, 1985.) It appears that the pressure of impending Federal budget cuts and loss of revenue-sharing funds for fiscal years 1987 and 1988 ostensibly prompted the Mayor’s request that the fee pass-along be made retroactive. In short, the city sought to increase the general revenues in order to roll over a larger surplus into 1987 and to use these funds for as now unspecified purposes. This view of the city’s powers under the enabling legislation is distorted. The statute permits the city to collect a fee for the costs of rent stabilization; it does not create a quasi property tax on rent-stabilized units, the proceeds of which will go into the city’s general coffers.
So, there was neither a contemporaneous need to fund rent regulation administration on the part of the city given the budget surplus and the previous payments made to the State nor was there any discretion given the city to recoup such payments from the landlords under the enabling legislation. *368 Under the circumstances, there could be no justifiable expectation that the fees were to be recovered retroactively. Fundamental fairness to present property owners and new purchasers and sellers would dictate that a retroactive scheme for collection of the fees would be inappropriate and in excess of the city’s mandate from the State. The court must expect that the city would act in accordance with State law, not contrary to it. (See, Check Cashers Assn. v Koch, NYLJ, Oct. 31, 1986, p 13, col 3.)
Moreover, the attempt to recapture funds going back to April 1984, more than two years prior to the enactment of Local Law No. 66, is inherently unreasonable. While retrospective statutes are not per se unconstitutional (United States v Darusmont, 449 US 292; Welch v Henry, 305 US 134), retroactive application is limited to periods of short duration. (Matter of Lacidem Realty Corp. v Graves, 288 NY 354.) When permitted, retroactive effect may reach back to the beginning of the calendar year of the enactment and at most a year prior, if the matter was under consideration at the time and the public had notice. (United States v Darusmont, supra.)
Here, the enactment occurred more than two years after the city had the discretion to pass along the fees but neglected to do so. Crucial to this inquiry is the "diligence and good faith of municipal officials” in pursuing the actions taken. (Matter of Charles v Diamond, 41 NY2d 318, 326.) The passage of prospective Local Law No. 95 in 1985 and the initial rejection of retroactivity weighs heavily against the validity of the retroactive charge. (Clarendon Trust v State Tax Commn., 43 NY2d 933; see also, Matter of Lacidem Realty Corp. v Graves, supra.) The conduct of the city on this matter has been far from diligent. The failure to comply with the Municipal Home Rule Law on the enactment of Local Law No. 26, now Local Law No. 66, coupled with the obvious and openly stated intent to capture revenue for purposes outside the scope of the enabling law manifests a lack of good faith on the part of the municipality. All in all, the city seeks to go back beyond the limits of retrospective application which this court will not permit.
The city relies heavily on the avowed public purpose to be served — increasing the general revenues to prevent a future anticipated shortfall of funds. This purpose, however laudatory, is, as previously noted, contrary to the enabling legislation which was intended to finance rent regulation, not other *369 unnamed government services. This stated purpose does not buttress a claim of retroactivity.
To summarize: there was an expectation of prospective application; the time period of retroactivity was excessive; considerations of fairness militate against retroactivity; and there was improper purpose to be served. On balance, all factors considered, Local Law No. 66’s retroactive provisions offend notions of due process.
Plaintiffs also maintain that Local Law No. 66 violates the equal protection clause because it discriminates against those individuals who purchased rent-stabilized multiple dwellings since December 1985 when Local Law No. 95 was enacted. These purchasers of property will be liable for fees for a period of time when they were not owners of the property.
The Department of Finance has indicated that it interprets the statute to impose the fee on the owners of the property for the given fee year and not upon the current owners who only recently purchased. This position is contrary to the posture that was taken by the city officials prior to the adoption of the provision (see, minutes of City Council, Dec. 18, 1985). And it tacitly concedes that the retrospective imposition of such fees on current owners for units not owned in 1984 or 1985 would not be permissible.
This latest interpretation, however, does not make sense when the law is viewed in its entirety. Local Law No. 66 provides for fees to be collected retroactively from "owners”. It also includes sanctions for the failure to remit the fees. The sanction consists of prohibition on rent increases. These sanctions will be applied to a nonowner, and, in effect, be without consequence or meaning. Alternatively, the sanctions would be used to penalize, after the fact, current owners for the omissions of their predecessors over whom they ostensibly have no control or recourse. This anomalous result is an unreasonable construction of the statute. Thus, this eleventh hour attempt by reinterpretation to salvage a constitutionally infirm statute is unavailing.
A statute will offend the equal protection clause, if it is not rationally related to a permissible public purpose. (Plyler v Doe, 457 US 202, 216.) There is no permissible public purpose to be served here by the discrimination practiced under the statute. The provision imposes what amounts to a penalty upon new owners.
Furthermore, Local Law No. 66 is invalid for the additional *370 reason that it conflicts with its enabling legislation. The authority of the city to enact local laws under the State Constitution or the Municipal Home Rule Law is conditioned on the exercise of such authority not being inconsistent with any State enactment. (People v De Jesus, 54 NY2d 465; Matter of Landsdown Entertainment Corp. v New York Dept. of Consumer Affairs, 133 Misc 2d 206 [Sup Ct, NY County 1986].) Inconsistency is not limited to cases of express conflict between State and local laws. Thus, a local law is inconsistent with State statute if it allows what State law prohibits or forbids what State law permits. (Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99.)
Here, the enabling legislation, as noted above, is a prospective enactment. The authority given the city cannot exceed the bounds of the enabling statute. Adopting a retroactive provision by the city is prohibited by the State. In addition, the enabling statute expresses the purpose for which the funds were to be collected, and the city in Local Law No. 66 ignores that purpose. The funds were to be utilized for a specific limited purpose — to defray the costs of rent stabilization on a year-to-year basis. They cannot be used to close a future possible budget gap by allocating funds to other government services no matter how compelling the financial distress of the city.
Lastly, the enabling statute clearly recites that the fees imposed are to be limited to $10 per year. In effect, the city, by its lassitude, is seeking through Local Law No. 66 to recoup three years of fees in one. This is yet another inconsistency that invalidates the statute.
Accordingly, the motion for summary judgment by plaintiff for a declaration that Local Law No. 26, now Local Law No. 66, violates the due process and equal protection clauses and is, therefore, unconstitutional and void is granted. Plaintiffs are also granted a declaration that the enactment is inconsistent with its enabling legislation and is invalid. The cross motion by defendants for summary judgment is denied.