BRUCE WITTENBERG et al., Respondents, v CITY OF NEW YORK et al., Appellants.

First Department, February 2, 1988

## APPEARANCES OF COUNSEL

*Kenneth K. Fisher* of counsel *(Andrew S. Fisher* and *Michael J. Vollbrecht* with him on the brief; *Fisher & Fisher,* attorneys), for respondents.

*Dana Martine Robbins (Larry A. Sonnenshein* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellants.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal is from an order declaring unconstitutional Local Laws, 1986, No. 66 of the City of New York, which had imposed, retroactive to April 1, 1984, a $10 per unit per year fee upon the owners of rent-stabilized multiple dwellings, in order to recoup an equivalent amount already paid by the city to the State of New York in reimbursement of the costs of administering the Rent Stabilization Law.

Prior to April 1, 1984, the Rent Stabilization Law[1] was administered in New York City by an owners' association known as the Rent Stabilization Association *(see,* Administrative Code § YY51-6.0), which was empowered to and did, in

---

1. Unless otherwise indicated, all Administrative Code citations herein are of the former unrevised code, not the recent recodification.

fact, collect dues from the owners (see, Administrative Code § YY51-6.0 [c] [former 12]). The Association administered the law at a cost of approximately $7.50 per unit per year.

The State Legislature amended section 8628 (c) of McKinney's Unconsolidated Laws of NY (Emergency Tenant Protection Act § 8 [c]; L 1974, ch 576, § 4), effective April 1, 1984, to transfer the administration of the provisions of the New York City Rent Stabilization Law to the State Division of Housing and Community Renewal (DHCR), which theretofore had administered the regulation of residential rents outside the City of New York, and to provide that the costs of such administration be borne by the city. In reimbursement of these costs, the city was authorized to charge the owners of rent-stabilized apartments an amount not to exceed $10 per unit per year.

The State did not immediately bill the city for its share of DHCR's administration costs. In September 1985, however, the State collected approximately $10,000,000 in costs attributable to DHCR's administration of the city rent-stabilization program in fiscal year 1984/1985 (Apr. 1, 1984 to Mar. 31, 1985), by withholding that amount from revenue sharing funds due the city. DHCR also requested that the city pay $10,000,000 per year for the 1985/1986 and 1986/1987 fiscal years.

On December 19, 1985, the New York City Council, by Local Laws, 1985, No. 95, enacted Administrative Code § YY51-6.0.7, which directed the Department of Finance to collect a fee of $10 per unit per year from the owners of rent-stabilized buildings, commencing with fiscal year 1985/1986.

On June 26, 1986, the City Council, recognizing the inequity of not imposing the fee levy for fiscal year 1984/1985, enacted Local Laws, 1986, No. 26 which, by amending Administrative Code § YY51-6.0.7 to add subdivision (c), made the $10 fee imposed upon the owners retroactive to fiscal year 1984/1985, the year for which the State had already withheld $10,000,000 from general revenue funds. The legislative findings, in part, state: "Local Law number ninety-five imposed a fee on a prospective basis only. As a result, the city is foregoing reimbursement of nearly ten million dollars and owners of rent stabilized buildings will be benefitting by having one year of administrative costs borne entirely by the city." (Local Laws, 1986, No. 26 § 1.)

Plaintiffs, the owners of rent-stabilized apartments, brought this action to enjoin the city from collecting the $10 fee and

for a judgment declaring Local Law No. 26 unconstitutional. On their motion for summary judgment they alleged that the law violated their due process rights because it was impermissibly retroactive and frustrated a building owner's reliance on Local Law No. 95, which had imposed the fee prospectively only. Plaintiffs further alleged that Local Law No. 26 violated equal protection in that it unfairly burdened those property owners who, having purchased their buildings in 1986, would be obliged to pay fees for a period of time when they had neither title nor possession.

Defendants, the City of New York, its Mayor and Commissioners of both Housing and Finance, cross-moved for summary judgment; asserting that the levy served the important public purpose of recouping the fees which the statute required the owners to pay, and which had not been collected for fiscal year 1984/1985. With respect to the claim that some owners would be forced to pay the fee for years in which they were out of title, defendants argued that the city would bill the current owners only for those fiscal years in which they actually owned the property. Owners who acquired title subsequent to October 1, 1984 would be requested to supply the name and address of the previous owner, who would then be appropriately billed.

By an amended complaint, plaintiffs also challenged Local Law No. 26 on the basis of a defective notice of public hearing. The notice of public hearing in the City Record erroneously gave the date as July 9, 1986 instead of July 8, 1986. Local Law No. 26 was reenacted as Local Law No. 66 (Administrative Code § 26-517.1 [c], as recodified) after companion legislation, passed at the same session, was invalidated due to defective notice in *41 Kew Gardens Rd. Assocs. v Tyburski* (NYLJ, Oct. 3, 1986, at 16, col 2, *affd* 124 AD2d 553, *lv denied* 68 NY2d 612). Plaintiffs thereafter moved to amend the complaint to challenge the constitutionality of the reenacted Local Law No. 26, Local Law No. 66.

In declaring Local Law No. 66 unconstitutional, the court concluded that the enabling statute, Laws of 1983 (ch 403), which amended section 8628 of the Unconsolidated Laws, intended only that the fees be applied prospectively, and that the city's enactment of Local Law No. 95 18 months later had "instilled in the owners and the subsequent purchasers of residential buildings the expectation that the costs of the administration of rent stabilization by DHCR would be borne by the city alone for the first year and a half" (134 Misc 2d

363, 367). Rejecting the city's argument that the retroactive imposition of the fee was an attempt to recoup money already deducted by DHCR, the court observed, "Indeed, during these years, the city ran a budget surplus and the additional revenues that could have been granted by a fee pass-along were not necessary to balance the budget and the moneys to be derived from such a retroactive pass-along would not defray administration costs, but rather admittedly would go into general revenues" *(supra,* at 367).

The court further concluded that the period of retroactivity was unreasonably long, and that the two-year delay in the city's attempt to collect the fees militated against the validity of the enactment. Additionally, the court held that Local Law No. 66 violated the Equal Protection Clause by requiring owners to pay fees for a period of time when they did not own the property, and observed that the Department of Finance's statement that it intended to charge only those property owners who acquired title prior to October 1, 1984 for fiscal year 1984/1985 was inconsistent with the statutory language that fees be collected from "owners", and the provision imposing as a sanction for noncompliance the penalty of a prohibition against rent increases. The court reasoned that such a sanction could only be applied to current owners. Finally, the court declared that Local Law No. 66 was also invalid because, while the enabling legislation provided for the collection of fees limited to $10 per year, "the city, by its lassitude [was attempting] through Local Law No. 66 to recoup three years of fees in one" *(supra,* 134 Misc 2d, at 370). Since we find Local Law No. 66's retroactive fee imposition to be constitutional, we reverse and declare accordingly.

Under the governing statutory scheme, the cost of administering the rent-stabilization program is to be borne by the owners of housing units covered by the law. Local Law No. 66's stated purpose was to recoup the money collected by the State for fiscal year 1984/1985 because otherwise "owners of rent stabilized buildings [would] be benefitting by having one year of administrative costs borne entirely by the city." Local Law No. 66 was not in conflict with the enabling statute. Although framed in prospective terms, the 1983 amendments to Unconsolidated Laws § 8628 took effect on April 1, 1984, and thus permitted the city to collect fees from that date at a rate of $10 per unit per year. Further, since Local Law No. 66 levies the $10 fee for only one year, fiscal year 1984/1985, it

does not violate the annual ceiling provided in Unconsolidated Laws § 8628 (c).[2]

■ Nor do we find that Local Law No. 66 discriminates against those property owners who acquired title after October 1, 1984. Whenever possible, a statute should be interpreted so as to uphold its constitutionality. *(See, Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,* 66 NY2d 298, 306; *Loretto v Teleprompter Manhattan CATV Corp.,* 58 NY2d 143, 148; McKinney's Cons Laws of NY, Book 1, Statutes § 150 [c].)* As property owners were reassured, the city did not intend to impose the fee on those owners who purchased their property after October 1, 1984, but would, if necessary, attempt to locate the prior owners to charge them for fiscal year 1984/1985. It was entirely reasonable for the Department of Finance to interpret the statutory term "owners" as meaning owners in title before October 1, 1984, an interpretation which obviates any constitutional infirmity.

The court also ruled that the two-year delay in enacting Local Law No. 66 was "inherently unreasonable" *(supra,* 134 Misc 2d, at 368). It is, of course, well settled that a tax, or, as here, a fee imposition, "is not necessarily unconstitutional because retroactive." *(Welch v Henry,* 305 US 134, 146.) The constitutionality of such a tax turns primarily on whether the taxpayer could have reasonably foreseen the enactment and, if he could have anticipated the tax, whether the taxpayer would have altered his behavior. *(See, United States v Darusmont,* 449 US 292, 299; *Chase Sec. Corp. v Donaldson,* 325 US 304; *Welch v Henry,* 305 US 134, *supra.)* Where the taxpayer "was forewarned by the statute books of the possibility of such a levy", the retroactive tax will be upheld *(supra,* at 147; *see also, Milliken v United States,* 283 US 15).

■ The owners of rent-stabilized multiple dwellings had actual notice of the fee imposition by virtue of Unconsolidated Laws § 8628 (c), made applicable to the City of New York effective April 1, 1984, which had explicitly provided for the payment of $10 per unit per year to defray the administrative costs of the Rent Stabilization Law. In such circumstances, the delay in enacting the fee levy for fiscal year 1984/1985 could not have created an expectation that the city would forego the levy and cover the administrative costs for that particular

---

**2.** Plaintiffs do not challenge Local Law No. 95, which imposed the fee for the year in which it was enacted, fiscal year 1985/1986, as well as prospectively.

year out of general revenues. In any event, in evaluating the constitutionality of a retroactive tax, the diligence, or lack thereof, of the legislative body in imposing the tax is only peripherally relevant. *(See, Clarendon Trust v State Tax Commn.,* 43 NY2d 933, 935, *cert denied* 439 US 831; *see also, Illinois Cent. R. R. Co. v Minnesota,* 309 US 157, 164-165.)

Even assuming, arguendo, that the property owners could not have anticipated the fee for fiscal year 1984/1985, a retroactive tax, as already noted, will not be found to be violative of due process, absent a showing that the taxpayer would have altered his behavior had he known of the tax. *(United States v Darusmont, supra,* 449 US, at 299; *Welch v Henry, supra,* 305 US, at 147-148; *Milliken v United States, supra,* 283 US, at 15.) In *Chase Sec. Corp. v Donaldson* (325 US 304, *supra),* the Supreme Court upheld a retroactive Statute of Limitations change, notwithstanding its impact on pending litigation. In rejecting any claim of reliance on the old law, the court noted (at 316): "This is not a case where appellant's conduct would have been different if the present rule had been known and the change foreseen. It does not say, and could hardly say, that it sold unregistered stock depending on a statute of limitations for shelter from liability."

Similarly, the property owners here cannot claim that they would have behaved differently had they known that the city would, at some point, collect the fee for fiscal year 1984/1985. Those property owners who purchased after October 1, 1984 are not subject to the fee, and those owners who took title prior to that date would still be subject to the fee for fiscal year 1984/1985 under Local Law No. 66, in any event.

The effect of the retroactive fee imposition must be balanced against the compelling public interest served by the enactment. *(See,* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv L Rev 692.) Local Law No. 66 seeks to recoup the costs of administering the rent-stabilization program for fiscal year 1984/1985, the costs of which had already been collected from the city. Local Law No. 66, in fact, does not impose a retroactive tax, but merely seeks to recoup a benefit received by the owners, who owed a $10 fee per unit for the 1984/1985 fiscal year but were not required to pay at that time. Such a levy is constitutionally permissible. *(See, Wagner v Baltimore,* 239 US 207.) Furthermore, contrary to the motion court's reasoning, that the funds collected by the city pursuant to Local Law No. 66 were not needed to compensate for a specific shortfall and were ear-

marked for a general revenue fund does not render the public purpose nugatory. This precise issue was addressed in *Wagner:* "It is true that the assessments are to go into the general fund provided for such general use. But we are unable to see how the constitutional rights of the complainant are violated, so long as there was as to it a benefit formerly conferred, and still existing, which the property had derived at the public expense" *(supra,* at 217).

Accordingly, the order of the Supreme Court, New York County (David B. Saxe, J.), entered April 7, 1987, which, *inter alia,* declared Local Laws, 1986, No. 66 of the City of New York unconstitutional, should be reversed, on the law, without costs or disbursements, defendants' cross motion for summary judgment granted, and Local Law No. 66 declared constitutional.

SANDLER, J. P., MILONAS and ELLERIN, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered on April 7, 1987, unanimously reversed, on the law, without costs and without disbursements, defendants' cross motion for summary judgment granted, and Local Law No. 66 declared constitutional.