*38 OPINION OF THE COURT
Howard F. Trussel, J.
In this nonpayment proceeding the owner, who is represented by an attorney, seeks rent from this pro se tenant. In addition, the owner moves for the enforcement of "So Ordered” stipulations, and the execution of a warrant to evict this tenant — all without a trial of the issues and without a judicial finding.
This court wanted an answer to two questions: (1) Did the owner charge the tenant the legal regulated rent? (2) Will tenant be evicted for failing to pay an amount of rent which is in excess of the legal regulated rent?
The owner’s petition addressed those subjects as follows: "Landlord is in compliance with, and the rent demanded does not exceed, the RSL and Code and Guidelines Board Orders”. The owner’s petition included its attorney’s affirmation, which verifies, in part: "deponent has read the foregoing petition and knows the contents thereof, that same is true to deponent’s own knowledge * * * The grounds of deponent’s belief as to all matters stated on deponent’s knowledge are records and statements furnished by petitioner his [its] agents and employees.” (Emphasis supplied.) The owner did not prove the above allegations in the petition, nor did the owner to date make a motion to prove such allegations.
As demonstrated below, the owner was and now insists on charging the tenant rent in excess of the legal regulated rent, and demands that tenant pay it or be evicted.
The owner moves this court for an order to sever tenant’s claim for an overcharge of rent without prejudice and thereby enable the tenant to file an application for such overcharge with the Division of Housing and Community Renewal (DHCR). Such a severance would have this court decide the summary aspect of the issues, which could include a final judgment for all rent due, and a warrant of eviction if not paid. Such a severance would leave the tenant with an administrative remedy with DHCR for an overcharge in rent after he has been evicted (cf., Matter of Sutton Realty Co. v Higgins, 174 AD2d 483, 484), in the event the final judgment was not paid. In addition, a severance is not supported by the decision of Copeland v Scott (NYLJ, Dec. 9, 1991, at 28, col 2 [App Term, 1st Dept]), in which it was held that the Civil Court had the capacity to decide the issue therein and it was error for the Civil Court to wait for a determination from DHCR.
*39 "So Ordered” stipulations have been entered into in the instant proceeding without a judicial finding as to the legal regulated rent for tenant’s apartment. In the case of Urban Assocs. v Hettinger (177 AD2d 439 [1st Dept]), the court held in an unrelated proceeding when deciding on a Housing Court’s "So Ordered” stipulation discontinuing an action: "A representation in a stipulation is not to be equated with a judicial finding.” (Supra, at 439.)
The stipulations herein are unenforceable in this proceeding on four grounds: (1) The owner failed to prove the allegations in the petition concerning the legal regulated rent; (2) The affirmation in the petition is erroneous and misleading because the books and records of the owner could not support a finding that the rent charged the tenant did not exceed the Rent Stabilization Law (RSL) and Rent Stabilization Code (RSC); (3) Any judgment based upon the stipulations herein must be for the legal regulated rent due (see, George Washington Gramercy Park Hotel Assn. v Bain, NYLJ, June 11, 1986, at 11, col 5 [App Term, 1st Dept]); and (4) The tenant could not lawfully relinquish her right to pay only the lawful regulated rent for "An agreement by the tenant to waive the benefit of any provision of the RSL or this Code is void.” (See, Rent Stabilization Code [9 NYCRR] § 2520.13.)
This court received information, summarized below, from the New York City Department of Finance (D.O.F.) that the owner of this building, which is a multiple dwelling, has not paid the mandated annual registration fees of $10 per apartment, per year, for one or more years. Such fees are required to be paid by the owner to the D.O.F. In addition, the owner must file annual registration statements with DHCR. (See, Rent Stabilization Law of 1969 [Administrative Code of City of NY, tit 26, ch 4] § 26-516 [g]; §§ 26-517, 26-517.1.) The total amount of annual fees, which must be paid to D.O.F., is based upon the owner’s annual registration statements, and is calculated by the number of rent-stabilized apartments multiplied by $10 per year.
This court also received from DHCR a computer printout of all the registrations and rent rolls for this tenant’s apartment.
Rent increases for rent-stabilized apartments are not authorized until this owner: (1) timely files with DHCR annual registration statements for petitioner’s multiple dwelling, consisting of six or more units (Rent Stabilization Code § 2520.11 [d]) from April 1st through July 31st, within any registration *40 year, or through any date extended by DHCR’s "Instructions for Registration”; and (2) timely pays the corresponding annual registration fees, plus interest, if any, in full to D.O.F. for any delinquent years for subject building. This owner must also comply with the Rent Guidelines Board with respect to rent increases, and provide this tenant with the calculations for each yearly charge.
Compliance with such annual registration requirements is essential (1) to establish the amount of the legal regulated rent that this tenant is required to pay, and (2) prevent the eviction of this tenant for failure to pay rent which might be in excess of the legal regulated rent. In the event the owner pays such fees late, such payment "shall result in the prospective elimination only of the sanctions” (Rent Stabilization Law § 26-517.1 [b] [emphasis added]).
The owner is charged with having actual notice of the law about annual registration and fee regulations. DHCR has published "Instructions for Registration” for owners. The copies for 1985, 1986 and 1987 are still available. In addition, a publication for owners "New York Apartment Law Insider”, notified the owners of the requirements of RSL, above. Its publication in September 1986 is entitled "How to File Your 1986 Rent Registration Statements” and informed owners that "You won’t be able to collect, or even apply for, a rent increase until you file”. Its publication in April 1987 is entitled "Pay $10.00 For Each Stabilized Unit by April 18.” Its publication in May 1989 is entitled "File 1989 Rent Registrations by July 31st.”
In Wittenberg v City of New York (135 AD2d 132 [1st Dept 1988]), the court held, in part:
(1) That those property owners who purchased after October 1, 1984, are not subject to pay the 1984/1985 fee; and
(2) That the owners of rent-stabilized multiple dwellings had actual notice of the law providing for the payment of said fee of $10 per unit per year.
When an owner does not comply with the Rent Stabilization Law with respect to filing annual registration statements and paying annual registration fees, the law requires that the rent be rolled back to the legal regulated rent. (See, 310 W. End Ave. Owners Corp. v Rosenberg, NYLJ, Aug. 28, 1991, at 21, col 4 [App Term, 1st Dept].)
A history of the owner’s payments of the annual registra *41 tian fees displaying the year and the amount of fees due as of April 11, 1991, the date of the petition follows:
1984— $590
1985— Paid
1986— $590
1987— $600
1988— Paid
1989— $600
1990— $620
The owner did not pay all of the delinquent annual registration fees until January 6, 1992.
The owner did not pay the annual registration fees for 1986 until January 6, 1992 and according to the law, the owner is not entitled to any rent increases for the year 1985, and all years thereafter until all the annual registration fees were paid in full, plus interest, and that would be from January 7, 1992. According to the record in this proceeding and the law, the monthly rent herein is rolled back to the year 1985 in the sum of $270.84 per month. All lawful rent increases from 1984 to date will commence the day after all the annual registration fees were paid.
On March 26, 1991, the owner acquired possession of said premises as a result of the judicial sale following the bankruptcy of the predecessor owner. This court holds that the predecessor owner could not lawfully collect more than $270.84 per month from January 1, 1985 through January 5, 1986; and, further, this tenant can pursue her remedy for an overcharge of rent from the predecessor owner. (Rent Stabilization Code § 2526.1 [¶] [2].) The tenant’s rent remains at $270.84 per month until March 26, 1991, the date of said judicial sale, through January 6, 1992, the date all annual registration fees were paid.
Petitioner relies on DHCR’s "Policy Statement 92-1” to relieve petitioner of the burden of proving that the rent charged herein does not exceed the lawful regulated rent. Such reliance is misguided. A careful reading of the Policy Statement reveals that it deals with DHCR procedures concerning DHCR orders rolling back rents where the fees in question were not timely paid. The Policy Statement does not purport to repeal the relevant sections of the Rent Stabilization Law or the Rent Stabilization Code.
When petitioner brings a summary proceeding, it must *42 establish the truth of the allegation in the petition that the rent sought herein does not exceed the lawful regulated rent. It does this by proof that the rent sought is calculated according to the law, including those provisions of the RSL and the RSC cited herein. Since tenants are rarely in a position to know whether the landlord has complied with the specific provisions relevant herein, as indicated above, the tenant cannot knowingly waive the right to have the allegation that the rent sought is lawful proved by the landlord. (Rent Stabilization Code § 2520.13.)
This court is constrained by the plain language of the Rent Stabilization Law and Code to enforce them as written. (See, Berkeley Assocs. Co. v Camlakides, 173 AD2d 193, 195.)
On July 23, 1991, this court attached the following statement to a "So Ordered” stipulation in this Cordero case: "for RENT STABILIZED APARTMENTS THE ISSUANCE OF A WARRANT IS STAYED UNTIL OWNER SUBMITS, AS DIRECTED HEREIN, ANNUAL REGISTRATION DATA REQUIRED BY SECTIONS 26-516H AND 26-517.1 RENT STABILIZATION LAW.”
This owner failed to comply with said direction in order to prove that the rent charged this tenant was the legal regulated rent. In addition, while this proceeding was and still is pending the owner instituted a similar proceeding against the tenant’s husband under a different name and under a different index number, as follows: index No. 62397, 1992, Tiebout Holding Co. L.P. v Victor and Raza Polanco, 2454 Tiebout Avenue, Bronx, New York 10458, apartment 5M. Both the Cordero and Polanco proceedings are hereby consolidated.
In view of the record in this case this court finds that the overcharge in rent was willful and the owner is liable to the tenant for a penalty equal to three times the amount of any and all overcharges paid by the tenant to the owner from March 27, 1991, to date.
Tenant’s motion to restore this case to the calendar because of the rent overcharge is granted. All stipulations and the issuance of a warrant are vacated.
It is required that a rent history with a proposed order and judgment be submitted to this court with a notice of settlement. The owner may do so without prejudice in order to preserve the owner’s right to appeal this decision and order. The tenant may also do so.