**Horace Lynn WIGGINS and Jimmie Sue Wiggins, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 89–4793.**

United States Court of Appeals, Fifth Circuit.

June 29, 1990.

---

Howard W. Gordon, Semet, Lickstein, Morgenstern & Berger, Coral Gables, Fla., for petitioners-appellants.

Nancy Morgan, Dept. of Justice, Gary R. Allen, Chief, Appellate Section, Tax Div., Mary Frances Clark, Peter K. Scott, Act. Chief Counsel, IRS, David I. Pincus, Washington, D.C., for respondent-appellee.

Before THORNBERRY, GEE, and BARKSDALE, Circuit Judges.

THORNBERRY, Circuit Judge:

Horace Lynn Wiggins and Jimmie Sue Wiggins appeal a decision of the United States Tax Court holding that the retroactive application of an amendment made to section 55(f)(2) of the Internal Revenue Code ("Code") did not constitute an unconstitutional taking of property without due process of law. Because we agree with the Tax Court that the amendment was merely a technical correction, we affirm.

## BACKGROUND

Horace Lynn Wiggins and Jimmie Sue Wiggins ("Taxpayers") sold some property in January 1983 for which they had previously claimed an investment tax credit on their 1982 federal income tax return. Their sale of the property before the close of its useful life made them liable for tax from recapture of the previously allowed investment credit. On their joint income

tax return for 1983, they correctly reported $3,986 under "Other Taxes" as the tax from recapture of the investment credit.

The Taxpayers also were subject to the alternative minimum tax for 1983. *See* 26 U.S.C. §§ 55–58.[1] The alternative minimum tax is a tax, in addition to regular tax liability, imposed on various tax preference items. The alternative minimum tax generally is the amount by which the tax computed under the alternative minimum tax rules (by subtracting certain deductions from taxable income and adding certain preference items) exceeds the taxpayer's regular tax. During the years in issue, section 55(f)(2) of the Code explained how "regular tax" should be computed for alternative minimum tax purposes, by excluding from regular tax the taxes imposed by certain specified Code provisions.

In computing their regular tax for alternative minimum tax purposes in 1983, the Taxpayers included the tax from recapture of the investment credit as part of their regular tax, since investment tax credit recapture was not one of the specified exclusions from regular tax. They then subtracted the regular tax (including the credit recapture) from the amount determined under the alternative minimum tax rules, to determine the amount of their alternative minimum tax for the year. The effect of this calculation was that they avoided paying any tax on the premature disposition of their investment tax credit property.

In 1984, Congress amended section 55(f)(2) to clarify that investment tax credit recapture is not included in a taxpayer's regular tax for the purpose of computing alternative minimum tax liability. Tax Reform Act of 1984, Pub.L. No. 98–369, § 711(a)(1), 98 Stat. 494, 942. This amendment to section 55(f)(2) was contained in a part of the Tax Reform Act of 1984 that made technical corrections to the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324.

The amendment to section 55(f)(2) was enacted on July 18, 1984, after the Taxpayers had disposed of the investment property and after the due date for the Taxpayers' 1983 tax return. But the statute made the amendment retroactive to tax years beginning after December 31, 1982, the effective date for TEFRA. *See* Tax Reform Act of 1984, § 715, 98 Stat. at 966. Because the amendment had retroactive effect, the Internal Revenue Service ("IRS") excluded the investment tax credit recapture of $3,986 from the regular tax when it assessed the Taxpayers' alternative minimum tax for 1983. Consequently, the IRS's assessment of the Taxpayers' total tax liability exceeded the Taxpayers' calculation.[2]

Following receipt of a statutory notice of deficiency from the IRS, the Taxpayers petitioned the Tax Court for a redetermination of their federal income tax liability for 1983. The parties stipulated to the relevant facts in the case. On April 19, 1989, the Tax Court issued an opinion, reported at 92 T.C. 869, holding that the retroactive application of section 55(f)(2) was not an unconstitutional taking of property without due process of law under the Fifth Amendment. The court entered its decision on August 17, 1989, determining a deficiency of $4,502 and statutory additions for negligence (which are not at issue here). The Taxpayers appeal the retroactive application of amended section 55(f)(2).

## DISCUSSION

Tax statutes have often been applied retroactively to transactions that occurred during limited periods prior to enactment, without violating the due process clauses of the Constitution. *E.g., United States v. Darusmont*, 449 U.S. 292, 297–98, 101 S.Ct. 549, 552–53, 66 L.Ed.2d 513 (1981);

---

1. Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. The Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, has since changed many of the provisions involved in this case.

2. The assessment did not exceed the Taxpayers' calculation by the exact amount of $3,986 because the IRS also made other adjustments to the alternative minimum tax that are not before us on appeal.

*Welch v. Henry*, 305 U.S. 134, 146–148, 59 S.Ct. 121, 125–26, 83 L.Ed. 87 (1938). In each case a court should consider the nature of the tax and the circumstances of its application to determine whether "its retroactive application is so harsh and oppressive" that it violates due process. *Welch v. Henry*, 305 U.S. at 147, 59 S.Ct. at 126. Retroactive application has been held unconstitutional only in situations in which a statute imposed a wholly new tax, which could not reasonably have been anticipated by the taxpayer at the time of the transaction. *E.g., Untermyer v. Anderson*, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928) (gift tax); *Blodgett v. Holden*, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206 (1927) (gift tax); *see United States v. Hemme*, 476 U.S. 558, 568, 106 S.Ct. 2071, 2078, 90 L.Ed.2d 538 (1986); *Welch v. Henry*, 305 U.S. at 147, 59 S.Ct. at 125; *Westwick v. Commissioner*, 636 F.2d 291, 292 (10th Cir.1980) ("The only revenue statutes held void for retroactivity involved wholly new types of taxes....").

██ The Taxpayers first advance several arguments to support their view that the retroactive application of the 1984 amendment to section 55(f)(2) unconstitutionally imposed a new tax and was not merely a technical correction. They contend that retroactive application of the amendment is harsh and oppressive because it taxes situations not previously subject to tax. We disagree. There is no new tax here. These Taxpayers were already subject to tax from recapture of the investment tax credit and to the alternative minimum tax. We do not see how a new tax has been imposed by eliminating a loophole that allowed them to avoid the tax from recapture simply because they were also subject to the alternative minimum tax.

The legislative history of the 1984 amendment indicates that this was not a new tax, but a correction necessary to effectuate Congress's intent in enacting TEFRA. An alternative minimum tax has been in effect in some form since 1969. *See* Tax Reform Act of 1969, Pub.L. No. 91–172, § 301, 83 Stat. 487, 580. With TEFRA, effective December 31, 1982, Con-

gress repealed the existing add-on minimum tax and alternative minimum tax provisions for noncorporate taxpayers and substituted an expanded alternative minimum tax for such taxpayers. 1 J. Mertens, Law of Federal Income Taxation § 2A.02 (1990).

Soon after the enactment of TEFRA, it became apparent to Congress that some technical corrections would be needed. The problem with including the investment credit recapture as part of the regular tax was recognized:

> The amount of minimum tax is the amount by which the tax computed under this rate schedule exceeds the taxpayer's regular tax. It was not intended that the regular tax, for this purpose, include any amount attributable to recapture of a prior year's investment credit; a technical correction is necessary to achieve this result.

Staff of the Joint Committee on Taxation, 97th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 18 (Comm.Print 1982).

The Report of the House Ways and Means Committee for the Tax Reform Act of 1984 explained how that Act would make the needed correction "to carry out the intent of Congress in enacting the original legislation":

> In order that a taxpayer may not avoid recapture of investment tax credit on disposition of investment credit property by reason of being subject to the alternative minimum tax, the bill clarifies that the amount of investment credit recapture is not included in the taxpayer's regular tax for purposes of computing alternative minimum liability. As a result, the recapture tax will be a liability in addition to the taxpayer's alternative minimum tax and regular tax.

H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1611 (1983), U.S.Code Cong. & Admin. News 1984, pp. 697, 1235.

The Taxpayers interpret the last sentence of this explanation to mean that excluding the recapture from the definition of regular tax in effect imposes an additional

new tax on persons subject to the alternative minimum tax, taxing situations not previously taxed. But the tax from investment credit recapture has long been required if a taxpayer disposes of property for which a credit was previously taken before the end of the property's useful life. *See* 26 U.S.C. § 47(a). The first investment tax credit provision, enacted in 1962, provided for recapture in the event of early disposition. *See* Revenue Act of 1962, Pub.L. No. 87–834, § 2(a) & (b), 76 Stat. 960, 962, 966. There was never any indication that this should not also be true for persons subject to the alternative minimum tax.

The Taxpayers knew they were subject to regular tax on their taxable income, to the investment credit recapture, and to the alternative minimum tax. It would have been illogical for Congress intentionally to allow elimination of the credit recapture through a process of reducing the alternative minimum tax by the amount of the recapture, which is the process the Taxpayers followed before Congress closed the loophole. The IRS is correct in its view that the 1984 amendment did not impose additional liability, but simply closed an unintended loophole that allowed taxpayers who were subject to the alternative minimum tax to avoid the investment credit recapture.

The Taxpayers note that the investment credit recapture had never before been excluded from the computation of the regular tax for alternative minimum tax purposes, ever since the alternative minimum tax had existed. They argue that Congress's failure to exclude it before 1984 means that Congress's intent changed in 1984. As early as 1979, the Senate Finance Committee was made aware of the problem caused by not excluding the investment credit recapture from the definition of regular tax. *See Technical Corrections Act of 1979: Hearing Before the Subcomm. on Taxation and Debt Management Generally of the Senate Comm. on Finance,* 96th Cong., 1st Sess. 166–67 (1979) (testimony of Bradford L. Ferguson, Assoc. Tax Legislative Counsel, Treasury Dept.). The Taxpayers argue that if the amendment in

issue were really a technical correction, the correction would have been made as soon as the problem was acknowledged, in 1979. By not enacting this correction in 1979, the Taxpayers argue, Congress indicated unequivocally that it thought the definition of regular tax did not need any correction to fulfill Congress's intent.

We do not find this argument persuasive. The possibility that Congress may have chosen not to enact curative legislation in 1979 does not make the legislation any less curative in 1984. Even if Congress believed the statute needed no correction in 1979, Congress viewed the 1984 amendment as a correction necessary to effectuate its intent in enacting TEFRA in 1982, which completely revised the computation of the alternative minimum tax.

The Taxpayers also argue that the exclusion of the investment credit recapture was a new tax because the other kinds of taxes already excluded from the computation of regular tax for alternative minimum tax purposes were wholly different in nature from the investment credit recapture. This argument is without merit. Contrary to the Taxpayers' assertions, the other excluded taxes were similar to the investment credit recapture in that they also involved some prior tax advantage recaptured because of premature disposition: *e.g.,* premature distributions relating to annuities under section 72(m)(5)(B), lump-sum distributions from qualified pension plans under section 402(e), early distributions from individual retirement accounts under section 408(f), and redemptions of retirement bonds under section 409(c). Like the investment credit recapture, each of these recaptures would effectively be nullified if not excluded from the alternative minimum tax computation.

■ The Taxpayers' second major objection is that the timing of the retroactive application of the 1984 amendment was unconstitutionally harsh and oppressive because the IRS applied the amendment to a transaction occurring beyond one year prior to enactment and before the tax year in which enactment occurred.

The Supreme Court has never explicitly imposed a time limit on the retroactivity of a tax statute's application. The Court "consistently has held that the application of an income tax statute to the entire calendar year in which enactment took place does not *per se* violate the Due Process Clause of the Fifth Amendment." *Darusmont*, 449 U.S. at 297, 101 S.Ct. at 552. Additionally, in several cases the retroactive application of a tax statute to an even earlier tax year has survived constitutional challenge.

Over a century ago, the Supreme Court suggested that it was not unconstitutional for Congress to impose a tax retroactive to the year before the year of enactment: "The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted...." *Stockdale v. Insurance Company*, 20 Wall. 323, 331, 22 L.Ed. 348 (1874), *quoted in United States v. Darusmont*, 449 U.S. at 297, 101 S.Ct. at 552. Later, in *Welch v. Henry*, the Supreme Court held that a tax law could be applied retroactively to income received during the year of the legislative session preceding that of its enactment. 305 U.S. at 150, 59 S.Ct. at 127. The statute in question was enacted by the Wisconsin legislature, which met only in odd-numbered years. The Court held that the statute enacted in March 1935 could be applied retroactively to income received during 1933, even though the law was enacted approximately one year after the taxpayer had filed a tax return for 1933. *Id.* at 150–51, 59 S.Ct. at 127. Retroactively applying tax statutes was a valid way to fulfill the legislative goal of apportioning the cost of government. *See id.* at 146–47, 59 S.Ct. at 125. In the circumstances, retroactive application was not so harsh and oppressive that it violated due process. *Id.* at 147, 59 S.Ct. at 126.

 We think the "harsh and oppressive" test of *Welch v. Henry* does not limit retroactivity to one year, but instead requires a case-by-case analysis in which the length of the period affected is but one factor to be considered. *See Canisius College v. United States*, 799 F.2d 18, 27 (2d Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987). Where legislation is curative, retroactive application may be constitutional despite a long period of retroactivity. *See id.* In *Canisius College v. United States*, the Second Circuit sustained the retroactive application, to a period of approximately four years prior to enactment, of a tax statute defining wages identically for FICA withholding and federal income tax withholding. The court found that the length of the period affected did not make retroactive application unduly harsh and oppressive because the legislation was curative. *Id.* at 26. *See also Temple University v. United States*, 769 F.2d 126, 134–35 (3d Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986) (same provision); *Fife v. Commissioner*, 82 T.C. 1 (1984) (new statutory provision, clarifying that investments in motion pictures qualified for an investment tax credit only if the motion pictures were new, was not unconstitutionally applied to an investment made three years before enactment of the provision, where Congress's intention in enacting the new provision was to clarify existing law, not to change the law).

Contrary to the Taxpayers' contentions, the effective date of TEFRA was an appropriate effective date for the curative amendment to section 55(f)(2), because TEFRA was the statute that established the particular alternative minimum tax provisions in effect when the 1984 amendment was enacted. The application of the amendment retroactive to that particular date is justified by a rational purpose. *See Canisius College*, 799 F.2d at 25. The amendment should have been part of TEFRA from the beginning. Because the amendment is curative, the fact that the effective date is some eighteen months before enactment does not make its retroactive application harsh and oppressive.

In conclusion, we think the Tax Court correctly found that the retroactive application of the amendment made by the Tax Reform Act of 1984 to section 55(f)(2) of the Internal Revenue Code did not constitute an unconstitutional taking of property

without due process of law. The 1984 amendment was not a new tax, but a technical correction designed to close an unintended loophole that allowed the Taxpayers to avoid paying tax from recapture of an investment tax credit simply because they were subject to the alternative minimum tax. The amendment should have been part of TEFRA, which expanded the alternative minimum tax. Making the amendment retroactive to tax years beginning after December 31, 1982, the effective date of TEFRA, is not harsh and oppressive in these circumstances.

AFFIRMED.