RALPH D. FURLONG AND JACQUELINE L. FURLONG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Furlong v. Commissioner
Docket No. 18586-90
United States Tax Court
T.C. Memo 1993-191; 1993 Tax Ct. Memo LEXIS 195; 65 T.C.M. (CCH) 2536; 16 Employee Benefits Cas. (BNA) 2579; April 29, 1993, Filed *195 Decision will be entered under Rule 155. For petitioners: Patrick B. Mathis and Kevin J. Richter. For respondent: Michael W. Bitner. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Chief Judge: Respondent determined a deficiency in Ralph D. and Jacqueline L. Furlong's (petitioners) 1982 Federal income tax and additions to tax as follows: Deficiency
Additions to Tax $ 89,369
Sec. 6651(a)(1)
$ 10,398
Sec. 6653(a)(1)
12,890
Sec. 6653(a)(2)
[1]   Sec. 6659
26,095
Sec. 6661
30,071
Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the sole issue for decision is whether retroactive application of section 72(p)(1)(A), enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, violates the Due Process Clause of the U.S. Constitution. FINDINGS OF FACT This case was *196 submitted fully stipulated under Rule 122. The stipulation and attached exhibits are incorporated by this reference. Petitioners resided in Mt.Prospect, Illinois, at the time they filed their petition in this case. Petitioners filed their individual income tax return for the taxable year 1982 on August 18, 1983. Throughout 1982, Mr. Furlong was the president and the sole shareholder of Wire Industries, Inc., a corporation doing business in Illinois. At all times during 1982, Mr. Furlong was a participant in the Wire Industries, Inc., Defined Benefit Plan. He was also a cotrustee under the plan. The Defined Benefit Plan was a qualified employer plan within the meaning of section 72(p)(4) (formerly section 72(p)(3)). On August 25, 1982, Mr. Furlong received a $ 99,000 loan from the Wire Industries, Inc., Defined Benefit Plan. The loan was represented by a demand promissory note which bore an interest rate of 12 percent per annum. On that date, Mr. Furlong received a check in the amount of $ 99,000 drawn on the Wire Industries, Inc., Defined Benefit Plan bank account. The check was deposited in a bank account held in the name of Industrial Steel & Wire Co., a sole proprietorship *197 owned and operated by Mr. Furlong. The check was duly paid on August 30, 1982. Petitioners did not include the proceeds from the loan in their 1982 taxable income. OPINION The parties in this case filed a stipulation of agreed adjustments with the Court resolving all but one issue raised in the notice of deficiency -- the $ 99,000 which petitioners received from the Wire Industries, Inc., Defined Benefit Plan, which respondent determined was includable in petitioners' 1982 taxable income pursuant to section 72(p)(1)(A). Petitioners' only contention with respect to this issue is that the retroactive application of section 72(p)(1)(A) is unconstitutional. Section 72(p)(1)(A) was enacted on September 3, 1982, as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 236(a), 96 Stat. 324, 509. Section 236(c)(1) of that Act provides that section 72(p)(1)(A) applies to any loan from a qualified employer plan which was made after August 13, 1982. 96 Stat. at 510-511. Thus, even though it was enacted on September 3, 1982, section 72(p)(1)(A) applies to loans made after August 13, 1982. Section 72(p)(1)(A) provides that, "If during any taxable year a participant *198 or beneficiary received (directly or indirectly) any amount as a loan from a qualified employer plan, such amount shall be treated as having been received by such individual as a distribution under such plan." Such distribution is includable in gross income during the year of receipt. Sec. 61(a). The parties have stipulated that the August 25, 1982, loan was a loan to petitioners from a qualified employer plan. Moreover, the record is clear that the $ 50,000 exception to the general rule of section 72(p)(1)(A) is not applicable in this case. Sec. 72(p)(2)(A)(i). Consequently, under the clear language of the statute, the $ 99,000 loan which Mr. Furlong received from the qualified employer plan constituted income to petitioners in 1982. Petitioners, nevertheless, contend that it is constitutionally impermissible to retroactively apply the amendment to them under these circumstances. It is a well accepted maxim that "Federal income tax provisions may be applied retroactively without infringing upon constitutional rights. United States v. Darusmont, 449 U.S. 292, 297 (1981)". Wiggins v. Commissioner, 92 T.C. 869, 871 (1989), *199 affd. 904 F.2d 311 (5th Cir. 1990). Moreover, there is a presumption of constitutionality, and courts have been very reluctant to invalidate retroactive tax legislation. See New England Baptist Hosp. v. United States, 807 F.2d 280, 284 (1st Cir. 1986); Wildman v. Commissioner, 78 T.C. 943, 955 (1982). The burden is on the taxpayer to establish that the legislature acted in an arbitrary and irrational way. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1 (1976); Reed v. United States, 743 F.2d 481, 484 (7th Cir. 1984). Congress has many times given a revenue measure an effective date prior to the date of actual enactment. United States v. Darusmont, supra at 296; Wildman v. Commissioner, supra at 956. The Supreme Court has consistently held that this practice does not per se violate the due process clause of the Fifth Amendment. See United States v. Darusmont, supra at 297, and cases cited therein. As we explained in DeMartino v. Commissioner, 88 T.C. 583, 587-588 (1987), *200 affd. 862 F.2d 400 (2d Cir. 1988) (citing Welch v. Henry, 305 U.S. 134, 147 (1938)), affd. without published opinion sub nom. McDonnell v. Commissioner, 862 F.2d 308 (3d Cir. 1988): The reasoning behind this principle is that taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract, but instead, it is a way of apportioning the cost of Government among those who enjoy its benefits and who must bear the resulting burdens. Since no citizen enjoys immunity from those burdens, retroactive application of the tax laws does not necessarily infringe on due process. [DeMartino v. Commissioner, 88 T.C. at 587-588. Citation omitted; fn. ref. omitted.]
See Stockdale v. Insurance Cos., 87 U.S. (20 Wall.) 323, 331 (1873); Fife v. Commissioner, 82 T.C. 1, 12 (1984). Remarkably, we are aware of no Federal income tax statute that has ever been invalidated by the Supreme Court for its retroactive applicability. [1] The only cases in which the Supreme Court has held *201 a revenue statute void for retroactivity involved either gift or estate taxation, and all of the cases were close decisions with vigorous dissenting opinions. See Untermyer v. Anderson, 276 U.S. 440 (1928) (gift tax); Blodgett v. Holden, 275 U.S. 142 (1927) (gift tax); Nichols v. Coolidge, 274 U.S. 531 (1927) (estate tax); Wiggins v. Commissioner, 904 F.2d 311, 314 (5th Cir. 1990), affg. 92 T.C. 869 (1989); see also Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692 (1960). Early Supreme *202 Court cases invalidated the retroactive application of certain gift tax provisions on the basis that "the nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the taxable event." Welch v. Henry, supra at 147. More recent decisions have sharply limited the scope of the reasoning of the earlier Supreme Court cases and confined the reasoning to situations where a wholly new tax was created. See United States v. Hemme, 476 U.S. 558 (1986); United States v. Darusmont, supra; see, e.g., Wiggins v. Commissioner, 904 F.2d 311 (5th Cir. 1990) (upheld retroactive change in treatment of investment tax credit recapture when calculating alternative minimum tax); Estate of Ekins v. Commissioner, 797 F.2d 481 (7th Cir. 1986) (retroactive repeal of an estate tax exclusion for life insurance policies upheld); Fein v. United States, 730 F.2d 1211 (8th Cir. 1984) (same as Estate of Ekins); Estate of Ceppi v. Commissioner, 698 F.2d 17 (1st Cir. 1983), *203 modifying 78 T.C. 320 (1982) (retroactive repeal of estate tax exclusion upheld); Reed v. United States, supra (same as Estate of Ceppi); but see Carlton v. United States, 972 F.2d 1051 (9th Cir. 1992). Notably, in three modern cases, the Supreme Court has rejected due process challenges to retroactive applications of income tax statutes. United States v. Hemme, supra; United States v. Darusmont, supra; Welch v. Henry, supra.
Petitioners cite Untermyer v. Anderson, 276 U.S. 440 (1928), and Blodgett v. Holden, supra, in support of their contention that the retroactive application of section 72(p)(1)(A) is unconstitutional. The cases, however, are gift tax cases, and the gifts in question were made and completely vested before the enactment of the tax statute. We do not consider them as controlling authority with respect to the retroactive application of section 72(p)(1)(A). United States v. Darusmont, supra at 299; *204 see Shanahan v. United States, 447 F.2d 1082 (10th Cir. 1971); Cohan v. Commissioner, 39 F.2d 540, 545 (2d Cir. 1930). As the Supreme Court stated in United States v. Hemme, supra at 568, Untermyer is of "limited value in assessing the constitutionality of subsequent amendments that bring about certain changes in operation of the tax laws, rather than the creation of a wholly new tax." See Sidney v. Commissioner, 273 F.2d 928 (2d Cir. 1960), affg. 30 T.C. 1155 (1958); Estate of McClanahan v. Commissioner, 95 T.C. 98 (1990). In determining whether the retroactive application of an income tax statute is constitutional, it is necessary to consider "The nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." United States v. Hemme, supra at 568-569 (quoting Welch v. Henry, 305 U.S. 134, 147 (1938)); *205 Wiggins v. Commissioner, 92 T.C. 869, 871 (1989); Wildman v. Commissioner, 78 T.C. 943, 955 (1982). This test "does not differ from the prohibition against arbitrary and irrational legislation". Pension Benefit Guaranty Corp. v. R. A. Gray & Co., 467 U.S. 717, 733 (1984). The Supreme Court has looked to two main considerations in determining whether the retroactive application of a tax statute is unconstitutional. First, whether the provision amounts to a "wholly new tax". See United States v. Darusmont, 449 U.S. 292, 300 (1981); Milliken v. United States, 283 U.S. 15, 23-24 (1931); Fein v. United States, supra at 1213. As Judge Learned Hand noted, a taxpayer: may indeed complain that, could he have foreseen the increase, he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities, the system being already in operation. His is a different case from that of one who, when he takes action, has no reason to suppose that any transactions *206 of the sort will be taxed at all. [Cohan v. Commissioner, supra at 545.]
Second, whether the change in the tax law was reasonably foreseeable. [2]United States v. Hemme, supra at 569 (noting "One of the relevant circumstances is whether, without notice, a statute gives a different and more oppressive legal effect to conduct undertaken before enactment of the statute" (emphasis added)); see United States v. Darusmont, 449 U.S. at 299; Welch v. Henry, 305 U.S. at 147; Milliken v. United States, supra at 23-24; Untermyer v. Anderson, supra at 445-446; Estate of Ekins v. Commissioner, supra; Reed v. United States, 743 F.2d 481 (7th Cir. 1984). The latter consideration is grounded on the former, in that a change in the tax rate is considered by its very nature to be reasonably foreseeable, whereas the imposition of a new tax may not be. See Milliken v. United States, supra at 23-24. *207 In support of their contention that the retroactive application of section 72(p)(1)(A) is unconstitutional, petitioners assert that section 72(p)(1)(A) constitutes a wholly new tax and that the change in the law was not reasonably foreseeable. Specifically, petitioners claim that throughout the history of income taxation, the Internal Revenue Code has never subjected loans to income tax and that, therefore, the amendment to section 72 constitutes *208 a wholly new tax. Contrary to petitioners' assertions, loans from retirement accounts were subject to Federal income tax for almost a decade prior to the time Mr. Furlong made the loan at issue. Prior to the enactment of section 72(p)(1)(A), the proceeds from loans from individual retirement accounts and certain qualified pension plans were treated as distributions includable in the gross income of the recipient. [3]
*209 In addition, the legislative history of the 1982 amendment to section 72 indicates that this was not a wholly new tax. Rather, section 72 was amended by Congress in 1982 to expand taxation of loans from retirement accounts to include loans to participants in plans maintained by corporate employers. In proposing the enactment of section 72(p)(1)(A), the Senate Finance Committee expressed its concern: that widespread use of loans from tax-qualified plans and tax-sheltered annuities diminishes retirement savings. Accordingly, the committee concluded that restrictions on loans and pledges should be applied to all plan participants. However, the committee [was] also concerned that an absolute prohibition against loans might discourage retirement savings by rank-and-file employees who may need access to such monies for emergencies. Thus, the committee [believed] it appropriate to permit smaller loans which [would] not substantially diminish an employee's retirement savings. [S. Rept. 97-494 (vol. 1), at 319-320 (1982).]
The notion of taxing loans from retirement accounts was not novel at the time Mr. Furlong entered into the loan transaction with Wire Industries, Inc., *210 Defined Benefit Plan. Petitioners are chargeable with knowledge that there was a chance of an increased tax burden if they chose to take a loan from a retirement account. See Milliken v. United States, supra at 24; Wiggins v. Commissioner, 92 T.C. at 872. We conclude that the nature of the tax could have been anticipated by petitioners at the time they entered into the loan transaction and that the enactment of section 72(p)(1)(A) did not constitute a wholly new tax. See Welch v. Henry, 305 U.S. at 147. Section 72(p)(1)(A) was initially proposed for enactment by the Senate Finance Committee on July 12, 1982, and had a proposed effective date of July 1, 1982. S. Rept. 97-494 (vol. 1), at 322 (1982). Petitioners were put on notice of congressional consideration of the provision enacted as section 72(p)(1)(A) by the issuance on August 17, 1982, of H. Conf. Rept. 97-760 (vol. 1), at 200-201 (1982), in which the proposed Senate amendment to section 72(p) was modified and adopted in the form in which it was eventually codified. Consequently, petitioners had ample notice of the expansion *211 of tax to loans from corporate employers' retirement accounts when Mr. Furlong borrowed from his corporation's plan on August 25, 1982, just 9 days before the enactment of the statute. See United States v. Darusmont, 449 U.S. 292, 299 (1981); Wiggins v. Commissioner, 92 T.C. at 873. In discussing the Fifth Amendment and the distinction between a taxpayer who could have foreseen an increase in taxation as compared to a taxpayer who has no reason to know a transaction would be taxed at all, Judge Learned Hand commented: No doubt the difference is one of degree, but constitutional matters are generally that; limitations like the Fifth Amendment are not like sailing rules, or traffic ordinances; they do not circumscribe the action of Congress by metes and bounds. Rather they are admonitions of fair dealing, whose disregard the courts will correct, if extreme and glaring. Custom counts for much in such matters, and consistency for little; men cannot hope to fit their doings in advance to a pattern which will be sure to endure. The most they can expect is that courts will intervene when the defeat of their expectations *212 passes any measure that reasonable persons could think tolerable, and even then their grievance must be fairly outside the zone of possible debate. [Cohan v. Commissioner, 39 F.2d 540, 545 (2d Cir. 1930).]
Petitioners have not convinced the Court that when they entered into the loan transaction at issue they had "no reason to suppose that any transactions of the sort [would] be taxed at all." Id. at 545. Nor have they established that the effect of the 1982 amendment to section 72 is either "harsh and oppressive" or "arbitrary and irrational". Consequently, we conclude that the situation here does not call for such a heroic remedy as to declare the retroactive application of section 72(p)(1)(A) unconstitutional. Pursuant to section 72(p)(1)(A), the August 25, 1982, loan represented a distribution of taxable income to petitioners from a qualified employer plan, and such distribution should have been included as income on petitioners' 1982 income tax return. To reflect the foregoing and due to concessions, Decision will be entered under Rule 155. Footnotes
1. 50% of interest due on $ 115,951.↩
1. Compare Federal income tax cases with Untermyer v. Anderson, 276 U.S. 440 (1928) (retroactive application of gift tax held unconstitutional); Nichols v. Coolidge, 274 U.S. 531↩ (1927) (retroactive application of estate tax held unconstitutional).
2. The U.S. Court of Appeals for the Seventh Circuit, to which this case is appealable, has taken into account the existence of notice in determining whether retroactive application is so harsh and oppressive as to transgress the constitutional limitation. See Estate of Ekins v. Commissioner, 797 F.2d 481 (7th Cir. 1986); Reed v. United States, 743 F.2d 481 (7th Cir. 1984); see also Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).
3. In 1981, Congress amended sec. 72(m) by adding a new subparagraph (8). Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 312(d)(2), 95 Stat. 172, 284. That amendment provided that: If, during any taxable year, an owner-employee receives, directly or indirectly, any amount as a loan from a trust described in section 401(a) which is exempt from tax under section 501(a), such amount shall be treated as having been received by such owner-employee as a distribution from such trust.
Moreover, in 1974, Congress enacted sec. 408(e)(3), as part of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, sec. 2002(b), 88 Stat. 829, 963. Pursuant to section 408(e)(3): If during any taxable year the owner of an individual retirement annuity borrows any money under or by use of such contract, the contract ceases to be an individual retirement annuity as of the first day of such taxable year. Such owner shall include in gross income for such year an amount equal to the fair market value of such contract as of such first day.↩